## WIBAUX, APPELLANT, v. GRINNELL LIVE STOCK COMPANY ET AL., RESPONDENTS.

PARTIES DEFENDANT—*Practice*—*Principal and surety.*—Where a bond is executed by sureties for the fulfillment of a contract entered into by their principals in a separate instrument, both principals and sureties may be sued jointly in an action for a breach of the contract.

CONTRACT—*Liquidated damages*—*Penalty.*—A contract for the sale of cattle stipulated a fixed sum to be paid to the purchaser upon a failure of the owners to deliver the entire number of cattle called for therein, but did not require the purchaser to accept at any one time a less number. The owners delivered a less number, which was accepted by the purchaser. *Held*, that the sum stipulated in the contract was an agreement for liquidated damages, but by the acceptance of a part performance, was changed into an agreement in the nature of a penalty, under which only such damages could be recovered as resulted from a partial breach of the contract.

*Appeal from Third Judicial District, Custer County.*

The demurrer to the complaint was sustained by LIDDELL, J.

### STATEMENT OF FACTS.

This was an action brought by the plaintiff (appellant in this court) against the Grinnell Live Stock Company for the alleged breach of a contract for the delivery of cattle, and with said company are joined as defendants T. L. Kimball and George W. Holderge, who are sued as guarantors or sureties of the cattle company for the fulfillment of the contract on its part. The allegations of the complaint material to be stated are in substance these: The plaintiff and said cattle company, on the 25th of August, 1888, entered into a written contract, whereby the plaintiff bought, and the cattle company sold, certain stock cattle, estimated at from 3,000 to 4,500 head (the number being indefinite, but not less than the former nor more than the latter

number), and to include the cattle that could with ordinary work and diligence be collected from the range of the cattle company on Hanging Woman Creek, within the limit as to number above mentioned. The cattle were to consist of 150 bulls, and the remainder of young cattle of both sexes; the calves not to be counted in the delivery, nor paid for by the purchaser, and not more than 450 yearling cattle were to be delivered. The plaintiff agreed to pay for said cattle $20 per head, and the delivery was to be between the 1st of October and the 1st of November, 1888. The contract further stipulates that the sum of $15,000 shall be forfeited by the plaintiff if he fails to comply with the terms of the contract. This amount the plaintiff paid the cattle company on the execution of the contract; while the cattle company, as surety for the fulfillment of the contract by it, agreed to and did give a bond in the sum of $15,000, with the defendants Kimball and Holderge as sureties. This $15,000 paid by the plaintiff, and secured by the cattle company, is referred to in the contract in one place as a penalty, and in another as liquidated damages. Plaintiff alleges that he performed all the conditions of said contract to be performed on his part, and was ready, able, and willing to receive and pay for all the cattle called for by said contract within the time specified for delivery. But said cattle company neglected and failed to deliver said cattle, except 123 bulls, 889 cows, and 317 yearlings; in all, 1,329 head, not reckoning calves. The complaint further alleges that the defendant cattle company had on its ranges not less than 4,000 head of cattle of the quality described in the contract, which, by the use of ordinary work and diligence, it could have delivered under the contract; and this is assigned as the breach of the contract on the part of the cattle company. The failure to pay the $15,000 is assigned as the breach of the contract on the part of the cattle company and the sureties on the guaranty. The action is against the cattle company, and the sureties on the separate guaranty, and alleges damages in the sum of $15,000, and prays for judgment for that amount. The defendant demurred to the complaint on several grounds: *First*, because of misjoinder of parties defendant; *second*, because several causes of action are improperly united; *third*, because the complaint does not state facts sufficient to con-

stitute a cause of action. The court sustained the demurrer on the last ground of demurrer, and, upon the plaintiff refusing to amend, rendered judgment against him for costs. To review this action of the court in sustaining the demurrer, this appeal is prosecuted.

*Strevell & Porter*, and *James H. Garlock*, for Appellant.

Where a contract is alleged and a breach or breaches are set out in the complaint, a general demurrer to such complaint will never be sustained. (1 Sutherland on Damages, 11; *Cowley* v. *Davidson*, 13 Minn. 92; *Wilson* v. *Clarke*, 20 Minn. 367; *Rider* v. *Pond*, 19 N. Y. 262; *McCarty* v. *Beach*, 10 Cal. 463; Sedgwick on Damages, 53; *Marzetti* v. *Williams*, 1 Barn. & Adol. 415; *Loeb* v. *Kamak*, 1 Mont. 155.) As to what items may be proved under a general allegation of damages, see, 1 Sutherland on Damages, 763; 1 Chitty on Pleading, (16th Am. ed.) 348; *Laraway* v. *Perkins*, 10 N. Y. 371; 2 Sedgwick on Damages, 606, n. *a*; *Roberts* v. *Graham*, 6 Wall. 578; *Jutte* v. *Hughes*, 67 N. Y. 267; *Spencer* v. *St. Paul etc. R. R. Co.* 21 Minn. 362.)

The parties to this contract have stipulated their mutual measure of damages in the following words: "And for the true and faithful performance of all and every one of the covenants and agreements above and hereinafter mentioned, the parties to these present bind themselves, each unto the other, in the penal sum of $15,000, as liquidated damages to be paid by the failing party." The plaintiff paid the sum of $15,000, the stipulated forfeit money, when the contract was signed. The defendant after having the plaintiff's money executed a bond in the like sum of $15,000. The defendant meant beyond all peradventure or doubt to have its damages liquidated in this contract, and that there should be no paltering or delay takes them in advance. The intention of the plaintiff that the contract shall be one for liquidated damages is evinced by this payment of the stipulated sum, which he consents shall be forfeited if he fails to stand by his obligation. The office of courts is to ascertain the intent of the parties, and, if not contrary to law, to carry their intent into execution. (Best, C. J., in 2 Sedgwick on Damages [7th

ed.], 231; *Dakin* v. *Williams,* 17 Wend. 447.)  If this is a contract where the parties to it have clearly intended to adjust and liquidate the damages which would attend its breach, there ought not to be any hindrance in giving it effect.  (2 Sedgwick on Damages [7th ed.], 241, 246, 247.)  The words "penal" and "penalty" seem often to be used as equivalent terms; but contracts containing either or both of the terms have yet been adjudged to be contracts for liquidated damages.  (2 Chitty on Contract [11th Am. ed.], pp. 1314, notes, 1318, 1319.)  The term "penalty" is not invaribly conclusive.  (*Harris* v. *Hardy,* 3 Hill, 393; *Streeper* v. *Williams,* 48 Pa. St. 450; *People* v. *Love,* 19 Cal. 677.)  The cases in which the sum specified was enforced as liquidated damages, though called by the parties a penalty, are *Santer* v. *Ferguson,* 7 Com. B. 716; *Pierce* v. *Fuller,* 8 Mass. 223; *Fisk* v. *Fowler,* 10 Cal. 513; *California Steam Nav. Co.* v. *Wright,* 6 Cal. 258; *Streeter* v. *Rush,* 25 Cal. 67; *Parr* v. *Village of Greenbush,* 112 N. Y. 246; *Little* v. *Banks,* 85 N. Y. 258; *Kemp* v. *Knickerbocker Ice Co.* 69 N. Y. 45; *Noyes* v. *Phillips,* 60 N. Y. 408; *Leggett* v. *Mutual Life Ins. Co.* 53 N. Y. 394; *Celment* v. *Cash,* 21 N. Y. 253.)  That it is competent and lawful for parties in their contracts to stipulate and settle their damages is not denied by any authority we have seen.  (*Davis* v. *Hendrie,* 1 Mont. 499.)  In nearly all of the more recent decisions the court rests the solution upon the intent of the parties as gathered from the language of the instrument.  (*Jaqua* v. *Headington,* 114 Ind. 309; *Maxwell* v. *Allen,* 78 Me. 32; *Hart* v. *McGrew,* Pa. Nov. 7, 1887, 11 Atl. Rep. 617; *Eakin* v. *Scott,* Tex. Apr. 10, 1880, 7 S. W. Rep. 777.)

*E. R. French, C. R. Middleton,* and *Word & Smith,* for Respondents.

The contention here on the part of the respondents is that the sum of $15,000 is provided in the contract as a penalty or penal sum, and that plaintiff's damages, if any have been sustained, would consequently have to be alleged and proved, and his recovery limited to such amount as the evidence would warrant.  (1 Sutherland on Damages, 478; 2 Sedgwick on Damages [7th ed.], 215, 216, 469; 1 Sutherland on Damages, 490, 503, 507,

508; 5 Am. and Eng. Encyc. of Law, 27, and cases cited; *Cheddwick* v. *Marsh*, 21 N. J. L. 463; *Shreve* v. *Brereton*, 51 Pa. St. 175.) Let it be noted that the words here used are ambiguous. (2 Sedgwick Meas. Dam. 216; 1 Sutherland on Damages, 480, 481, and notes; 3 Parsons on Contracts [5th ed.], 157; *Lampman* v. *Cochran*, 16 N. Y. 275; *Davis* v. *Gillett*, 52 N. H. 126; S. C. 1 Sutherland on Damages, 487, n.; *Kemble* v. *Farren*, 6 Bing. 141; *Berry* v. *Wisdom*, 3 Ohio St. 241; *Streeter* v. *Rush*, 25 Cal. 68; 5 Am. and Eng. Encyc. of Law, 24, and notes; 1 Addison on Contracts, § 496.) Where, as in this case, the damages actually suffered are in the nature of things ascertainable, and the sum named is, or may be, grossly disproportioned to them, the very strongest grounds are presented for construing such sum as a penalty. (*Scofield* v. *Tompkins*, 95 Ill. 190; *Lansing* v. *Dodd*, 45 N. J. L. 525; Chitty on Contracts [9th Am. ed.], § 894; 1 Sutherland on Damages, 503, 504; 5 Am. and Eng. Encyc. of Law, 25; *Berry* v. *Wisdom, supra; Streeter* v. *Rush, supra.*)

For the partial breach of contract alleged, the plaintiff must allege actual damages, and prove them. (*Watts* v. *Camors*, 115 U. S. 353; 1 Sutherland on Damages, 521, 525, and cases, 528, n. 1 to p. 524; 3 Parsons on Contracts, 156, et seq.; *Farrar* v. *Beeman*, 63 Tex. 175.) Plaintiff must allege and prove a specific demand for performance, in respect to the particular matters wherein the alleged breach consists, before an action can be maintained. (5 Am. and Eng. Encyc. of Law, 527, et seq., and notes; 2 Parsons on Contracts, 517, 519, and notes.) For a full explanation of the distinction made by the courts between penalties and liquidated damages, see 3 Parsons on Contracts (5th ed.), 156, et seq., and notes; *Astley* v. *Weldon*, 2 Bos. & P. 346, 363; *Kemble* v. *Farren*, 6 Bing. 141; *Edwards* v. *Williams*, 5 Taunt. 247; *Street* v. *Rigby*, 6 Ves. 815; *Beckham* v. *Drake*, 8 Mees. & W. 846, 853; *Atkyns* v. *Kinnier*, 4 Ex. 776; *Dakin* v. *Williams*, 17 Wend. 447, 455; *Muldoon* v. *Lynch*, 66 Cal. 540; *Heard* v. *Bowers*, 23 Pick. 455; *Moore* v. *Platte Co.* 8 Mo. 467; *Curry* v. *Larer*, 7 Pa. St. 470; *Beale* v. *Hayes*, 5 Sand. 640. On appeal to this court, if for any cause the judgment below was proper, it will not be disturbed. (*McMullen* v. *Armstrong*, 1 Mont. 486.)

It is clear that two causes of action were improperly united in one complaint, and parties defendant were improperly joined in the same action.

DE WOLFE, J.— An examination of the complaint shows, we think clearly, that it states a cause of action against one or all of the defendants. The contract between plaintiff and defendant company, and also the guaranty entered into by the defendants, Kimball and Holderge, on behalf of the cattle company, are set forth *in hæc verba*, and with sufficient averments to constitute a cause of action. In this respect the complaint is rather redundant than insufficient in allegation. Nor can it be said that several causes of action have been improperly united. The action is one for damages for an alleged breach of contract, and for which it seeks to make all the defendants liable. If a demurrer lies at all to the complaint, it must be on the first ground stated, on account of a misjoinder of parties defendant. As will be observed from the statement, the cattle company are sued for the alleged breach of contract in failing to deliver the cattle called for by its terms, and for the failure to pay the $15,000 penalty or liquidated damages which it agreed to pay in case of failure. The defendants, Kimball and Holderge, are sued on their contract of guaranty or suretyship. The cattle company did not join the last-named defendants in the instrument of guaranty executed by them. Nor are Kimball and Holderge liable on the contract between the plaintiff and the cattle company, except as their liability arises from the guaranty. The instruments are distinct, while both relate to the same subject. It follows that the liability of the defendants is separate and distinct in some respects, and that of each must be sought for and determined from the contract separately made by them. In no event can the defendants, Kimball and Holderge, be held for any sum above $15,000, whatever may be the liability of the cattle company under its contract. Whether they are liable for that amount will depend upon the damages sustained by the plaintiff for the failure to deliver the cattle called for by the contract, and whether the $15,000 is to be treated as a penalty, or as liquidated damages.

At the common law, parties jointly liable could not be sued

separately, while parties severally liable could not be sued jointly. If the cause of action created a joint and several liability, the plaintiff could, at his election, sue all of the defendants jointly, or each separately, but was compelled to proceed in one or the other of these modes. (1 Chitty on Pleading, 30, et seq.) The Code of Civil Procedure and the rule of pleading thereunder have changed all this; the policy of the reformed system being to lop off all effete forms, or those which serve no useful purpose, and enable a party in one action, and by a single proceeding, to subject all parties, whether jointly or severally liable, and whether upon the same or separate instruments. Section 1296 of the fifth division of the Compiled Statutes enacts as follows: "All joint obligations and covenants shall hereafter be taken and held to be joint and several obligations and covenants." And section 20 of the Code of Civil Procedure is as follows: "Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and sureties on the same or separate instruments, may, all or any of them, be included in the same action, at the option of the plaintiff." Construing these provisions of our law in connection, we cannot doubt but what it was the intention of the legislature to do away with the technical rules which formerly surrounded parties as to whether their obligation was joint or several, and subject all or any number of them to a single action, at the option of the plaintiff, without regard to the exact nature of their liability, when measured by the former rules of pleading. The statute of New York is similar to our own on this subject, except that it leaves off the last clause, relating to sureties on the same or separate instruments. The construction of this statute came before the court of appeals of that State in the case of *Carman* v. *Plass*, 23 N. Y. 286. The action was against one of the defendants as principal, and the other as guarantor, for the payment of the amount stipulated to be paid by a certain lease made between the plaintiff in the action and the defendant Plass. There was a demurrer on the ground that no cause of action against the defendants jointly was set forth in the complaint. The defendants had judgment in the trial court, which was reversed in the Supreme Court, and the judgment of the latter court was affirmed in the

court of appeals.  The court in its opinion says:  "No doubt, a pretty radical innovation upon the common-law system of pleading was made when by the Act of 1832 the several obligations of parties to a bill or note were allowed to be enforced in a single action.  But this had become familiar law when the Code was written, and it seems then to have been considered that the principle might be usefully extended to cases like the present; and the section referred to appears to me to have been framed for that purpose."  (*Carman* v. *Plass*, 23 N. Y. 288.)  The question came before the Supreme Court of California in the case of *Powell* v. *Powell*, 48 Cal. 235, and arose on two bonds of the defendant, J. N. Powell, as executor of the estate of G. W. Powell, deceased, against him as principal, and his co-defendants as sureties.  The sureties on the two bonds were different, and the two bonds were executed at different times, but both were conditioned that the defendant Powell should, as executor, faithfully execute the duties of his trust according to law.  The defendant Powell, having been removed from the office of executor, was ordered by the court to pay to his successor, as administratrix of the estate, certain moneys in his hands belonging to the estate; and, failing to do so, the action was brought against him, and the sureties on both bonds, to recover the amount. Each set of sureties demurred separately that they had been improperly joined in the same action, and that two causes of action had been improperly united.  The demurrers were sustained in the trial court, but this ruling was reversed in the Supreme Court, the court in its opinion saying:  "The sureties who are sued, as observed already, though executing separate bonds, assumed a common burden, and, as being sureties on separate instruments, may be properly joined as co-defendants in the action;" referring to the section of the Code of that State which corresponds with section 20 of our Code, recited *infra*. Other authorities could be cited in support of the same principle, but the statute is too plain for misinterpretation as to the right of the plaintiff to sue the sureties jointly with the cattle company in the present action.

We come, then, to the other and more difficult question raised in the argument, and in the brief of counsel, as to whether the $15,000 mentioned in the contract is to be treated as a penalty,

or as liquidated damages. It is designated in the contract by both these appellations. This, however, is not decisive of the question, as the authorities establish the rule that it will be held as one or the other, according to the intent of the parties, and without giving any special stress to the use of either expression; the word "penalty" sometimes being held to be fixed or liquidated damages, and the use of the latter words being sometimes held to be intended as a penalty, and to cover only the actual damages sustained. In *Noyes* v. *Phillips*, 60 N. Y. 408, the court, on this subject, says: "The word 'forfeit' is not conclusive. A fundamental rule upon this subject is that the words employed must, in general, yield to the intention of the parties as evinced by the nature of the agreement, the amount of the sum named, and all the surrounding circumstances." The cases on the subject are very numerous, but a review of most of them would, besides taking much space, serve no very useful purpose, as they were mostly decided upon the particular facts of each case, so that from them no fixed or uniform principle can be deduced. The authorities all lay down the general principle that the parties to contracts may stipulate for liquidated damages for its breach, and that courts will uphold agreements of this kind when it is plainly the intention of the parties. Sutherland, in his work on Damages, lays down the rule in the following language: "Parties, in making contracts, are at liberty to stipulate the amount which shall be paid by either party to the other as compensation for the anticipated actual loss or injury which they foresee or concede will result from a breach, if it should occur. The sum which they so fix becomes, on the happening of the event on which its payment depends, the precise sum to be recovered, and the jury are confined to it; nor will equity relieve from the payment of it." (1 Sutherland on Damages, 475.) Parsons, in his work on Contracts, states the rule in the following language: "The law will permit parties to determine, by an agreement which enters into the contract, what shall be the damages which he who violates the contract shall pay to the other; but it does not always sanction or enforce the bargain they may make on this subject. . . . . Where the parties make this agreement, but not in such wise that the law adopts it, then the damages thus agreed upon are a penalty, or

in the nature of a penalty. And the question whether damages agreed upon are to be treated as liquidated, or as in the nature of a penalty, and therefore reduced to the actual damage, often occurs, and is not always of easy or obvious solution." Further on, in the same chapter, the author says: "One rule for determining the question is this: that the action of the court shall not be defined and determined by the terms which the parties have seen fit to apply to the sum fixed upon. Though they call it a 'penalty,' or give to it no name at all, it will be treated as liquidated damages; that is, it will be recognized and enforced as the measure of damages, if, from the nature of the agreement and the surrounding circumstances, and in reason and justice, it ought to be. And, although they call it 'liquidated damages,' it will be treated as a penalty, if, from a consideration of the whole contract, it appears that the parties intended it as such, or if, where the injury is certain, the sum fixed upon is clearly disproportionate to such injury, and the real claim which grows out of it." (3 Parsons on Contracts, 156, et seq.) Similar language could be cited from other authors, as well as the decisions of courts, on the question, but it is deemed unnecessary. The difficulty does not lie in the rule of law, but in its application.

We can scarcely conceive of a case where the parties have more clearly expressed their intention to fix in advance a sum as the ascertained and liquidated damages to be paid on a breach of the contract than they have done in the case now before us. They have not only fixed the amount, but, as if to place beyond the reach of either party to dispute, or call in question the sum agreed upon as damages, the cattle company exacts and recovers from the plaintiff in advance the sum agreed on, which, by the terms of the contract, it is to retain if the plaintiff fails to comply with the terms and conditions of the contract; while the cattle company, as security for the fulfillment of the contract on its part, causes to be executed and delivered to the plaintiff a bond or undertaking, with sureties, in the sum of $15,000, conditioned for the faithful performance of the contract. No language or acts could more definitely express the intention of the parties than was used and acted on in this case; and if there had not been a partial performance on one side in the delivery

of the cattle, and an acceptance thereof by the plaintiff, we should unhesitatingly declare that the sum of $15,000, stipulated to be paid, was to be treated as liquidated damages, and not as a penalty. The contract itself did not require the cattle company to deliver, nor the plaintiff to receive, at any one time, a less number of cattle than the entire number called for by the contract. But if the parties have voluntarily waived this right, and accepted the delivery of a part, can they now claim the entire sum stipulated to be paid as upon a total breach of the contract? We think not; and this, upon reason as well as authority. The contract, it is true, provides for the payment of the sum agreed upon as damages on a failure of either party to keep and perform "all and every one of the covenants and agreement resting upon him." This clause of the contract is to be construed with its other provisions, and particularly in connection with the stipulation as to the delivery of the cattle; and, as this does not provide for a partial delivery at one or different times, it follows that the $15,000 was to be paid only on a total failure to deliver the cattle. If this is not so, the plaintiff could (as he has in part done) have waived his right to a full delivery at one time of all the cattle purchased, and thus have received the full benefit of the contract, and, upon the slightest failure on the part of the cattle company to deliver the full number of cattle, could allege this as a breach which would entitle him to the full sum of $15,000. Such, we believe, was not the intention of the parties when making the contract; and it would be inequitable and unjust in the court to give it such a construction, in the absence of a manifest intention of the parties. The principle we announce is supported by many adjudications and text-writers of the highest authority. The leading English case is *Kemble* v. *Farren*, 6 Bing. 141. It was an action to recover the sum of £1,000 agreed upon as fixed and liquidated damages in the event of a failure of either party to comply with the terms of a theatrical engagement. The agreement in this respect was as follows: "If either of the parties should neglect or refuse to fulfill the said agreement, or any part thereof, or any stipulation therein contained, such party should pay to the other the sum of £1,000, to which sum it was thereby agreed that the damages sustained by any such omission, neglect, or refusal should amount; and

which sum was thereby declared by the said parties to be liqui-
dated and ascertained damages, and not a penalty or penal sum,
or in the nature thereof." There was a partial performance or
fulfillment of the contract. The action was to recover the £1,000
stipulated to be paid in case of breach. The decision was by
Tindal, C. J., who in his opinion says: "It is undoubtedly diffi-
cult to suppose any words more precise or explicit than those used
in the agreement; the same declaring not only affirmatively that
the sum of £1,000 should be taken as liquidated damages, but
negatively, also, that it should not be considered as a penalty, or
in the nature thereof. . . . . If, therefore, on the one hand, the
plaintiff had neglected to make a single payment of 3l. 6s. 8d.
per day, or, on the other hand, the defendant had refused to con-
form to any usual regulation of the theater, however minute or
unimportant, it must have been contended that the clause in ques-
tion, in either case, would have given the stipulated damages of
£1,000. But that a very large sum should become immediately
payable in consequence of the non-payment of a very small sum,
and that the former should not considered as a penalty, appears
to be a contradiction in terms; the case being precisely that in
which courts of equity have always relieved, and against which
courts of law have, in modern times, endeavored to relieve, by
directing juries to assess the real damages sustained by the breach
of the agreement." This case is cited with approval by many
American courts, and is the recognized authority on this subject
in the courts of England. We cite the following additional
authorities: *Hoagland* v. *Segur*, 38 N. J. L. 230; *Shute* v.
*Taylor*, 5 Met. 61; *Watt* v. *Sheppard*, 2 Ala. 425; 1 Sutherland
on Damages, 528. The latter writer thus states the rule:
"For the same reason that one sum cannot consistently be com-
pensation alike for a total and partial breach, a stated sum made
payable for the former cannot, by construction, be applied to
any infraction after acceptance of part performance;" and cites
too many cases in note 1 in support of the rule. In *Watt* v.
*Sheppard, infra,* the action was upon a contract for the sale and
conveyance of land, and the parties stipulated for the payment
of $10,000 as liquidated damages to be paid on a failure to con-
vey. The contract was in part executed. In its opinion the
court says: "Though $10,000 be the damages stipulated for the

failure to make title to the land, 'or any part thereof,' yet that sum cannot be recovered in the present case. It was competent for Sheppard to have refused a conveyance for a part until the title was perfected to all. . . . . It was certainly an extravagant estimate for a failure to convey a part of it. . . . . If the recovery was not to be diminished to the extent of the comparative value of the land conveyed, upon the same principle the entire sum stipulated would be the measure of damages if the title remained incomplete to the poorest acre in either of the tracts. Such an assumption would strike every one as unreasonable in the extreme, and producing a result never contemplated by the parties." This language is as pertinent to the facts of this case as it was to the case in which it was used, and we cannot add to its force.

From these and like authorities we think that the partial delivery and acceptance of cattle under this contract changed what we should otherwise have held to be an agreement for fixed or liquidated damages into an agreement in the nature of a penalty, under which the plaintiff can recover only such damages as he sustained from the partial breach of the contract. The cause is therefore reversed, and remanded to the District Court, with directions to overrule the demurrer to the complaint.

Judgment reversed.

BLAKE, C. J., and BACH, J., concur.