## COLE MANUFACTURING CO. APPELLANT, *v.* MORTON
### ET AL., RESPONDENTS.

[No. 1186.]

[Submitted January 30, 1900.    Decided March 26, 1900.]

*Principal and Surety—"Suretyship"—"Guaranty"—Bond
Parties—Joinder.*

1. Where a part of an agreement creating an agency was a bond executed to plaintiff by the agent and the defendants conditioned that if the agent failed to perform his duties, and pay over to the plaintiff such sums as might be due him, the defendants would pay such sum, not exceeding $200, the defendants were sureties, within Civil Code, Section 3670, defining a surety as one who becomes responsible for another to secure a benefit to the other, and hence the agent and defendants were properly joined in an action on the bond, under Code of Civil Procedure, Section 585, providing that persons severally liable on the same obligation, including sureties on the same or separate instruments, may be included in the same action at the plaintiff's option.

2. Under the Codes of 1895, there is preserved the general distinction between suretyship and guaranty, viz: A surety is bound with the principal as an original promisor on the same contract, while a guarantor makes his own separate contract; in other words, a surety makes his contract primarily for the principal, while a guarantor makes his contract mainly for his own benefit.

3. The liability of sureties is limited by the amount of their undertaking.

*Appeal from District Court, Missoula county; F. H. Woody,
Judge.*

ACTION by the Cole Manufacturing Company against Charles Morton and others.    From a judgment for defendants, plaintiff appeals.

### STATEMENT OF THE CASE.

The plaintiff and appellant brought this action against the defendants and respondents upon a written undertaking. Plaintiff alleges that in the spring of 1895 it entered into an agreement with the defendant Morton to the effect that Morton was to be the sole agent of the plaintiff in Missoula county, Montana, for selling goods manufactured by the plaintiff, and that said Morton was to buy of said plaintiff all goods by him to be bought of the kind manufactured by the plaintiff, and to sell the same in Missoula county, promising to pay plaintiff the prices agreed upon therefor, the defendant Mor-

ton to retain as his commission the amount that he should re-
ceive over and above the amount that he agreed to pay to
plaintiff.   It is further alleged that, in order to better secure
the faithful performance of said contract, Morton, as princi-
pal, and the other defendants, as sureties, made, executed, and
delivered to plaintiff their certain bond in writing as follows,
to-wit:

"Missoula, Sept. 12th, 1895.

"Whereas, the Cole Manufacturing Company, of Council
Bluffs, Iowa, have appointed Charles Morton, of Missoula,
Montana, its sole and exclusive agent for handling and selling
their Cole air-tight heaters in the county of Missoula and
state of Montana, and such other supplies as may be required
by him, and the said company having required of the said
Morton a bond in the sum of two hundred dollars for the
faithful performance of his duties as agent aforesaid:   Now,
we, Charles Morton, as principal, and R. S. Sommerville and
A. P. Tietjen, sureties, do hereby undertake and are bound
by these presents unto the Cole Manufacturing Company of
Council Bluffs, Iowa, in the penal sum of two hundred dol-
lars, lawful money of the United States, well and truly to be
paid to the said Cole Manufacturing Company aforesaid.
Conditions as follows:   That in the handling and sale of the
said goods of the said company the said Morton will act faith-
fully, and that he will account for and pay over any and all
money received by him for and on account of the sale and
disposition of said goods, less his charges and commissions
therefor; and, in the event that he fail to perform these con-
ditions, we will pay the said Cole Manufacturing Company
such sum as may be due from said Morton to said company,
not exceeding two hundred dollars.

"Given under our hands this day and date above written.

"Charles Morton.
"R. S. Somerville.
·   "A. P. Tietjen."

It is then alleged that the said bond was to form a part of
said agreement, and the said agreement was not to take effect

until the bond was executed, signed, and delivered to and accepted by the plaintiff; that, in compliance with the said agreement, and after the bond was executed, and signed by defendants Somerville and Tietjen, and accepted by plaintiff, it sold and delivered to the said Morton certain goods to the amount of $1,138.85, no part of which has been paid except the sum of $897.50, and that the balance of $241.35 remains unpaid by Morton and his bondsmen. It is alleged that demand was made of Morton before the commencment of this action that he pay this sum of $241.35, and that a demand was also made of the bondsmen for the payment of $200, but that each of them failed and neglected to pay any sum at all.

Somerville and Tietjen demurred generally and upon the special grounds that there was a misjoinder of parties defendant, and upon the further ground that two alleged causes of action were improperly united. The alleged misjoinder of parties defendant was because Somerville and Tietjen were made co-defendants in the same action with Morton, although the complaint showed that the alleged liability of these defendants is not joint, nor equal to the alleged liability of their said co-defendant, Charles Morton, and because the alleged liability of said two defendants does not arise from the same obligation as the alleged liability of their said co-defendant, Morton. The ground of demurrer for the alleged improper union of two causes of action was that an alleged cause of action against the defendant Morton for goods, wares, and merchandise sold and delivered was united with an alleged cause of action against said two defendants upon a certain instrument in writing whereby they obligated themselves to pay to plaintiff for any failure on the part of said Morton to faithfully perform his duties as agent of said plaintiff as is set forth in the bond. The court sustained the general and special demurrer of the defendants Somerville and Tietjen. The defendant Morton also demurred generally and upon substantially the same two special grounds embraced within the demurrer of his co-defendants. The court overruled Morton's general demurrer, but sustained the special demurrer. The

plaintiff declined to amend, and judgment was thereafter entered in favor of the defendants Somerville and Tietjen for costs.    Plaintiff appeals.

*Mr. Marcus L. Crouch*, for Appellant.

MR. JUSTICE HUNT, after stating the case, delivered the opinion of the Court.

By the execution of the obligation sued on, Somerville and Tietjen agreed to become liable to the Cole Manufacturing Company to an extent not to exceed $200 if Morton did not act faithfully in the performance of his duties as agent of the plaintiff corporation, and if he failed to account for any and all moneys received by him on account of sales, less his commissions.    This contract became one of suretyship—a direct liability was incurred to the Cole Manufacturing Company for the acts to be performed by Morton.    The purpose of their suretyship was to secure to Morton certain benefits of the agency created.    They did not agree merely that Morton was able to perform the acts required to be performed, or promise collaterally to answer for the debt or default of Morton—which would have been a strict guaranty—but they assumed to pay over to the Cole Company such sum as might be due, not exceeding $200, if Morton himself should not pay over as he was bound to do.    The nature of this undertaking was such that when Morton failed to pay over as alleged, Sommerville and Tietjen became directly responsible at once, and it was unnecessary for plaintiff to establish Morton's failure to carry out his contract to pay over and to establish damages on account of the failure, before their obligation became absolute.    (Section 3670, Civil Code; *Riddle* v. *Thompson*, 104 Pa. St. 330.)

There is preserved in the Codes the general distinction between suretyship and guaranty, which is that a surety is bound with the principal as an original promisor on the same contract, while the guarantor makes his own separate contract.    (Civil Code, Title XIII., Chapters I. and II.)    Section

3610 was enacted with regard to this distinction, as it specially provides that, where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms with that obligation a part of the consideration to him, no other consideration need exist, but in all other cases there must be a consideration distinct from that of the original obligation. Distinction is again observed in Section 3670 of the Civil Code, which defines a surety as one who, at the request of another, and for the purpose of securing for him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person. It appears by these statutes that the surety makes his contract primarily for the principal, while the guarantor makes his contract for his own benefit, benefit to the debtor seldom forming part of the inducement for him to make the contract.

In *Bailey Loan Co.* v. *Seward*, 9 S. D. 326, 69 N. W. 58, the court considered Sections 4297 and 4273 of the Compiled Laws of Dakota, which are exactly like Sections 3670 and 3600 of the Civil Code of Montana, which in turn are like Sections 2831 and 2787 of the Civil Code of California, and used this language: "But, while the defendants, Buell and Price, used the term 'guaranty' in their contract, it would seem they were, under our Code, sureties, assuming, as it is apparently conceded, that they executed the guaranty to give credit to the principal debtor, and not for any benefit to themselves. Under the provisions of our Code, where such is the case, the party is a surety, and not a guarantor, within the meaning of those terms as used in the Code. The text-books and most of the reports make no very clear distinction between a surety and a guarantor. But in preparing the Civil Code for the state of New York (but which was never adopted in that state) the commissioners, in their notes to Section 1558, of which our Section 4297 is a copy, make a clear and well-defined distinction between a surety and a guarantor. They say: 'The distinction between a surety and a guarantor is,

that the former enters into the contract primarily for the benefit of the debtor, while with the latter the benefit of the principal debtor is no part of the inducement to him to contract.' Civ. Code N. Y. p. 467. In other words, a guarantor is one who enters into the contract mainly for his own benefit, and not for the benefit of the principal debtor. The distinction above made was adopted by the commissioners who prepared the California Codes. See note to Section 2831, Civ. Code Cal. The chapter on guaranty and the chapter on suretyship are to be construed with this distinction in view."

In *Nading* v. *McGregor*, 121 Ind. 465, 23 N. E. 283, 6 L. R. A. 686, the Supreme Court of Indiana said: "It is often a question of very great difficulty to determine whether a particular instrument of writing constitutes a strict guaranty, or whether it constitutes an original undertaking. In a strict guaranty the guarantor does not undertake to do the thing which his principal is bound to do, but his obligation is that the principal shall perform such act as he is bound to perform, or, in the event he fails, that the guarantor will pay such damages as may result from such failure. It is this feature which enables us to distinguish à strict or collateral guaranty from a direct undertaking or promise. So that, when an instrument of writing resolves itself into a promise or undertaking on the part of the person executing it to do a particular thing which another is bound to do in the event such other person does not perform the act himself, it is said to be an original undertaking, and not a strict or collateral guaranty. In the latter class of contracts the undertaking is in the nature of a surety, and the person bound by it must take notice of the default of his principal."

The facts and the bond in the recent case of *Durand & Casper Co.* v. *Rockwell*, (Ind. App.) 54 N. E. 771, were very similar to the case before us. Rockwell executed a bond as principal with Rudolph and Raasch as sureties. In 1890 Rockwell entered into a contract with Durand and others by which he was to sell goods, and draw certain profits, collect accounts, and conform to any rules his employers might make.

In 1894 he and two sureties executed a bond conditioned that whereas Rockwell had been made a salesman, and during his employment there might come into his hands moneys of his employers, therefore, if the said Rockwell should pay over without loss or delay, and faithfully account for, all such moneys so coming into his possession, then the obligation was to be void; otherwise, to remain in force and effect. It was insisted that the bond was a contract of guaranty, and the lower court so regarded it; but on appeal the bond was held to be an original undertaking on the part of the sureties, and not a collateral guaranty. The court said the sureties "did not undertake to pay any damages resulting from Rockwell's default, but they undertook to do the thing Rockwell had promised to do in the event he failed. Thus this court in *Wheeler* v. *Rohrer*, 21 Ind. App. 477, 52 N. E. 780, said: 'In a strict collateral guaranty the guarantor does not undertake to do what the principal is bound to do, but he undertakes, in the event the principal fails to do what he has promised, to pay damages for such failure. A guarantor undertakes to pay such damages as result from the principal's default. A surety undertakes to do the particular thing if the principal fails.' "

Tried by these distinctions (which are really declared by the statutes), we conclude that Sommerville and Tietjen became sureties, subject to the statutes fixing their liabilities as such. Being sureties, bound, with their principal, as original promisors on the same contract, they may be sued jointly with the principal. (*McMillan* v. *Bank* (Ind.), 2 Am. Rep. 323; Code of Civil Procedure, Sec. 585; *Heppe* v. *Johnson*, 73 Cal. 265, 14 Pac. 833; *Wibaux* v. *Grinnell Livestock Co.*, 9 Mont. 154, 22 Pac. 492; *Hoskins* v. *White*, 13 Mont. 70, 32 Pac. 163; *Cockrill* v. *Davie*, 14 Mont. 131, 35 Pac. 958; *Manry* v. *Waxelboum. Co.* (Ga.), 33 S. E. 701.)

The liability: of all arose on the same instrument, at the same time, and from a breach of the same contract. The contract is referred to in the bond, and set forth with some detail in the complaint, and, plainly, the bond was made with rela-

tion to this contract, and as part of it.    It is so averred.    By the agreement Morton was to pay over to his employer moneys belonging to it, but he failed to do so; thereupon he became liable as principal, and the sureties became liable also on their contract, which afforded a security for the debt due by Morton. (*Burns* v. *Manufacturing Co.*, 87 Ind. 541; *Morgan* v. *Organ Co.*, 73 Ind. 179; *Durand & Casper Co.* v. *Rockwell, supra.*)

The liability of the sureties is limited by the amount of their undertaking. (*City of Butte* v. *Cohen*, 9 Mont. 435, 24 Pac. 206; *Hoskins* v. *White, supra*; *Wibaux* v. *Grinnell Livestock Co., supra.*)

These views dispose of the several points raised by the demurrers.    We conclude that the court erred in entering judgment against plaintiff.

The judgment appealed from is reversed, and cause remanded.

*Reversed and remanded.*

