LYON, RESPONDENT, v. FEATHERMAN, RECEIVER, APPELLANT.

(No. 6,182.)

(Submitted October 21, 1927. Decided November 15, 1927.)

[261 Pac. 268.]

*Banks and Banking—Directors and Officers—Powers—Borrowing Money on Note of Officer—Liability of Bank—Guaranty—Consideration—Insolvency of Bank—Guarantor General Creditor.*

Banks and Banking—Transfer of Notes to Obtain Loan—When not Absolute Sale—Guaranty.

1.   Where a bank in need of funds to make good an impairment of its capital stock transferred certain questionable assets to its vice-president at their face value, who agreeably with a resolution of its directors secured a loan thereon on his note, guaranteed by certain stockholders of the bank, the money being placed to its credit, the transaction *held* not an absolute sale of the assets, and therefore the contention of the bank's receiver in an action by one of the guarantors to have his claim established as a general creditor of the bank under his guaranty that no liability rested upon the bank cannot be sustained, especially where the board of directors by resolution pledged the net profits of the bank for repayment of losses sustained by the guarantors.

Same—Stockholder Becoming Guarantor for Liability of Bank—Consideration.

2.   The benefit which a stockholder in a bank derived from the transaction referred to above, in common with other stockholders by way of keeping the otherwise financially embarrassed bank open, was not such a consideration for their contract of guaranty for the loan made for the bank's benefit as would relieve it from liability.

Same—Directors—Nonliability for Losses on Loans Made in Good Faith.

3.   Directors of a state bank cannot be held liable for losses on loans made in good faith at a time when a reasonably prudent banker would consider the making of the loans for the best interest of the bank, though, on looking back, the making of the loans may appear to have been unwise or hazardous.

Same—Directors Disqualified from Acting on Resolution as Interested Parties.

4.   Where all of the directors of a bank were guarantors of a note for a loan to the bank, they were, as interested parties, disqualified from passing a resolution pledging the net profits of the

3.   Liability of bank directors in case of bad loans or investments, see notes in 55 L. R. A. 762; 39 L. R. A. (n. s.) 173. See, also, 3 R. C. L. 459. Liability of director of bank or loan company for bad loans, see note in 45 A. L. R. 678.

[80 Mont. 504.]

bank for the repayment of losses which might be sustained by the guarantors.

Guaranty—Consideration.

5. A contract of guaranty is made for the benefit of the guarantor, mainly, and if made at the same time as the original obligation, no other consideration need exist.

Same—Nature of Engagement—Entitled to Indemnity—Right of Action.

6. A guarantor's engagement is a collateral undertaking whereby he is bound independently of the person for whose benefit his promise is made and, on default of the principal, the guarantor must pay such damages as result therefrom, whereupon he is entitled to indemnity from the principal for the amount he is required to pay, and may at once maintain suit against him, either as upon an express or an implied contract to reimburse him.

Banks and Banking—Right of Directors and Managing Agent to Borrow Money and Pledge Securities of Bank.

7. The directors and managing agent of a state bank have authority to borrow money for the necessary use of the bank and pledge its assets for the repayment of the money borrowed; and if in so doing they mistake the law relative to what would and what would not bind the bank under the law merchant, that mistake must be considered excusable.

Same—When Note of Officer Obligation of Bank.

8. Where a bank officer in executing his personal note makes it appear therein that the obligation is that of the bank which is given credit for the amount thereof, he is not personally liable thereon; therefore, where in such a note references were incorporated which by necessary implication showed that he was acting as the agent of the bank and that it was guaranteed by certain of its stockholders, the instrument carried with it the implied contract to reimburse the guarantors for losses sustained by them by the failure of the bank.

Same—Stockholder Guaranteeing Note Executed by Managing Agent of Bank—Insolvency of Bank—Guarantor General Creditor of Bank.

9. Under the above and the rules of equity, *held* that where a bank stockholder guaranteed a note executed by the vice-president of the bank in his individual capacity for the purpose of procuring a loan in aid of the bank, he was entitled to reimbursement from the bank, or, upon its suspension, to have his claim as one of its general creditors approved by the receiver.

---

[1]   Guaranty, 28 **C. J.**, sec. 3, p. 889, n. 34.
[2]   Guaranty, 28 **C. J.**, sec. 213, p. 1037, n. 80.
[3]   Banks and Banking, 7 **C. J.**, sec. 169, p. 563, n. 24.
[4]   Corporations, 14a **C. J.**, sec. 1854, p. 92, n. 74.
[5]   Guaranty, 28 **C. J.**, sec. 50, p. 918, n. 50.
[6]   Guaranty, 28 **C. J.**, sec. 2, p. 887, n. 15, p. 888, n. 25; sec. 114, p. 963, n. 64; sec. 214, p. 1037, n. 82.
[7]   Banks and Banking, 7 **C. J.**, sec. 154, p. 546, n. 92; sec. 166, p. 559, n. 88.
[8]   Banks and Banking, 7 **C. J.**, sec. 168, p. 562, n. 17 New. Corporations, 14a **C. J.**, sec. 1949, p. 170, n. 1.
[9]   Agency, 2 **C. J.**, sec. 459, p. 795, n. 74.

5. See 12 **R. C. L.** 1077.
6. Contract of guaranty, see note in 105 **Am. St. Rep.** 502. See, also, 12 **R. C. L.** 1053.

*Appeal from District Court, Granite County; George B. Winston, Judge.*

SUIT by William Lyon against H. A. Featherman, as receiver of the Drummond State Bank of Drummond. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. R. E. McHugh,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Howard Toole,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

An appeal from a judgment and decree establishing the claim of William Lyon as a general creditor of the Drummond State Bank, insolvent, for the sum of $3,300.

The facts in this case are undisputed and were established, in the main, by documentary evidence. They are as follows: The plaintiff Lyon was compelled to pay the sum of $3,300 to the Agricultural Credit Corporation of Minneapolis, as a guarantor on a note executed by one J. E. Meyers to that corporation under circumstances hereinafter detailed. Between the time the Meyers note was executed and delivered and the payment made by Lyon, the Drummond State Bank had failed, and H. A. Featherman had been duly appointed receiver. Lyon presented his claim to the receiver, who disallowed it, and Lyon, having first secured leave of court, commenced an equitable action to establish his claim.

The Agricultural Credit Association was organized for the purpose of aiding country banks under one or the other of three plans: (A) Direct loans on bills payable secured by adequate collateral; (B) outright purchase, without recourse, of high-grade bills receivable; (C) loans to stockholders of the bank for the purpose of removing slow and questionable assets from the bank. This latter plan contemplated that, when a

bank was in such condition that it was questionable as to whether or not its notes would ever be paid, and its bills receivable were a poor risk, the stockholders might place the bank in sound financial condition by personally borrowing money from the Credit Corporation on their notes, secured by adequate collateral, and with the money so received remove from the bank its objectionable paper. The Credit Corporation required that, when such a loan was made, although the note therefor was signed by the stockholders personally, the proceeds must go direct to the bank. The Credit Corporation had no authority to loan money to individuals, and did not do so except under plan C, and then only "for the sole benefit of the bank."

The Drummond State Bank applied to the Credit Corporation for a loan, and that institution sent one of its examiners to Drummond. He made an exhaustive examination of the bank's condition, and reported to the corporation that the bank had slow and questionable paper totaling $41,728.91, which he designated as "losses," and which would have to be removed from the bank; that the bank required a loan of that amount, and that, in the condition of the bank, the loan could only be made under plan C.

It appears that at the same time an examination had been made by a deputy state examiner, and a reasonable inference from the record is that the stockholders of the bank were either ordered, or were about to be ordered, to make good the impairment of the capital stock to the extent of the $41,728.91 represented by the assets last referred to, when a special meeting of the board of directors was called for May 3, 1924. The meeting was attended by six directors of the bank, including J. E. Meyers, vice-president and general manager, and William Lyon, plaintiff in this action. Meyers stated the purpose of the meeting to be the consideration of the "contemplated loan to the stockholders by the Agricultural Credit Corporation * * * for the benefit of the Drummond State Bank." Thereupon a resolution was introduced and adopted, which recited that it was necessary to take steps to increase the

bank's reserve, and remove from the bank certain slow and questionable assets, and that the stockholders were not financially able, "without great sacrifice," to pay an assessment, but that Meyers had suggested that it would be possible for certain stockholders (being the directors present) to secure a direct loan from the Agricultural Credit Corporation "by giving notes and guarantees." The resolution then listed assets which should be removed from the bank, totaling $41,728.91, which the directors estimated had a valuation of not to exceed $34,548.94, and stated that J. E. Meyers had offered to "purchase" these from the bank at $41,728.91, which offer was accepted, and the vice-president and cashier authorized to "sell, assign, and transfer" the assets to Meyers, giving him "full title" thereto.

Having thus perfected a method by which a loan could be secured from the Credit Corporation, in accordance with the report of its examiner, the directors proceeded to adopt the following resolution: "That the Drummond State Bank, upon accumulation of earnings agreed not to pay any dividends to stockholders until the net loss that may be incurred from a loan made by the Agricultural Corporation for the benefit of the Drummond State Bank to Messrs. J. E. Meyers, Gust Johnson, Wm. Lyon, H. T. Cumming, F. P. Emory, and V. B. Morse, the participating stockholders in said loan, should first be paid to the above named stockholders, thereby reimbursing them for their net loss on account of such loan of $41,728.91; said earnings to be held intact in the undivided profits account until said loan has been liquidated, and the net loss, if any, determined upon."

A third resolution was then passed authorizing the sale "without recourse" for the sum of $10, certain "charged out" paper of the bank amounting on its face to $39,367.34, to J. E. Meyers "to be used by him as collateral to a loan which he and other participating stockholders are negotiating with the Agricultural Credit Corporation."

The directions in the resolutions having been carried out, Meyers wrote the Credit Corporation that, "in compliance

with our preliminary application for a loan we beg to submit herewith final papers,'' among which were a note from Lyon to Meyers for $3,000, secured by a chattel mortgage on his cattle, tendered as collateral; the principal note for $41,728.91, signed by Meyers, and on which appears the guaranty signed by the other "participating stockholders"; a direction by all of them that the "net proceeds" of the loan be deposited in a Missoula bank "for the credit and use of the Drummond State Bank"; and a statement signed by the guarantors that their notes to Meyers were not given as accommodation paper, but "for a good and valuable consideration received" from Meyers. It will be noted that the letter is written in the plural; it is signed "J. E. Meyers, Vice-President."

The loan was made and the net proceeds deposited as directed and used by the bank. After the bank failed, the bank assets pledged were sold by the Credit Corporation, under power given, for $1,000, and that amount credited on the principal note. The Credit Corporation then called upon Lyon, and he was forced to pay the sum of $3,300 in settlement of his note. Lyon testified that he received no consideration for the execution and delivery of his note to Meyers, but, on cross-examination, admitted that, as a stockholder and depositor in the bank, he was benefited by having the bank placed in a temporarily sound condition and kept open. This benefit also, of course, accrued to Meyers and the other guarantors; all were further benefited by being relieved from paying an assessment at that time.

The defendant has made numerous assignments of error which jointly raise but the question as to whether the preponderance of the evidence, weighed and measured by the law applicable to such a situation, warranted the holding that the bank was liable for any loss or damage suffered by the guarantors.

1. Counsel for the defendant contends that the transaction [1] between the bank and Meyers constituted an absolute sale of the assets of the bank for the sum specified, and

that, therefore, no liability rested upon the bank. While the transaction was designated a "sale" in the resolution referred to above, it is clear that it was not the intention of Meyers to make an outright purchase, at their face value, of assets so questionable in actual value as to require their removal from the bank, nor was it the intention of the bank to sell those assets to him, but rather to turn them over to him for use in securing a loan for the bank. It is clear that it was the intention of all of the parties to the transaction that the bank should secure a loan from the Agricultural Credit Corporation, and that that institution should loan to the bank the exact sum necessary to remove those assets from the bank, and that all that was done was accomplished in an attempt, on the part of the directors of the bank, to comply with the requirements and directions of the Credit Corporation, under the only plan by which that institution could loan money to the bank in its then impaired condition; that the Credit Corporation had no intention of loaning money to Meyers as an individual, as it could not, and did not, make such loans. It is further clear that as the Credit Corporation would loan money to the bank neither on its "bills payable" nor its "bills receivable," the directors of the bank intended to secure a loan to the bank by means of the execution and delivery, by the "participating stockholders," of obligations personal on their face, and that this procedure was countenanced and agreed to by the Credit Corporation. Again, it is clear that the turning over of the assets to Meyers alone, rather than to the joint "participating stockholders," was merely a matter of convenience, and that, equitably, Meyers stood in no different position than did the guarantors on his note, and that, as to all of these stockholders, the bank intended to assume full liability for the obligation and to save its stockholders who came to its assistance from loss or damage by reason of the transaction. Had the transaction between the bank and Meyers been a "sale" of the assets listed, the bank would have had no

occasion to make the pledge of its net profits contained in the second resolution quoted, and could not lawfully have done so.

2. It is, however, contended that, as Meyers and the guar-[2] antors received benefits from the transaction, as noted above, the legal effect of the transaction was a sale of the assets.

It is true that, in common with all other stockholders and depositors, these men were benefited by the placing of the bank in a sound position and keeping it open, and, as stockholders, they were liable to the depositors and creditors of the bank for the impairment suffered by reason of the depreciation of the assets listed, and, had the obligation assumed been the same as they would have been called upon to pay in the statutory manner of making good the impairment, and had they then been discharged from further liability under the statute, the consideration would have been sufficient to support their sole liability on the obligation. However, the bank examiner was authorized under the circumstances to require the stockholders of the bank to make good the impairment (sec. 6078, Revised Codes 1921), but, on a call under this requirement, each stockholder would be liable only to the extent of the amount of his stock, and these men would have been assisted by all other stockholders of the bank (section 6036, as amended by Sess. Laws 1923, p. 24). The expedient adopted did away with the necessity of a call at that time, and the creditors and depositors reaped the benefit of the transaction, without having their right to recourse against the stockholders in any manner impaired.

The record does not disclose the amount of stock held by each of the directors, but it does disclose that the plaintiff here was called upon to pay, and required to pay, $1,000 as his stockholder's liability, in addition to the $3,300 paid on his contract of guaranty.

In addition to their stockholders' liability, these men, as [3] directors, might have been liable for losses occurring

through the acquisition of the assets in question, if those losses occurred through their negligence or mismanagement, but no such showing was made, and it is well settled that directors cannot be held liable for losses on loans made in good faith at a time when any reasonably prudent banker would consider the making of the loans for the best interest of the bank, on looking back, the making of the loans appears to have been unwise or hazardous. (1 Michie on Banks and Banking, 363.)

The benefits which the guarantors secured by the transaction cannot, therefore, be said to constitute a consideration for their contract which will relieve the bank from liability, if it was otherwise liable.

3. It might be held that the resolution pledging the net [4] profits of the bank for the repayment of losses by the guarantors was supported by consideration, and could be enforced, were it not for the fact that all of the directors so agreeing on the part of the bank were disqualified from acting on the resolution. (*Gordon Campbell Petroleum Co.* v. *Gordon Campbell-Kevin Syndicate,* 75 Mont. 261, 242 Pac. 540.)

4. Questions as to the primary liability of Meyers on the [5] note as drawn, and as to whether the bank could have been sued upon the note for its benefit by Meyers as its agent, are not before us. We are concerned only with the position of a guarantor on the note. The contract of guaranty was made for the benefit of the guarantor, mainly (*Cole Mfg. Co.* v. *Morton,* 24 Mont. 58, 60 Pac. 587), and, as it was made at the same time as the original obligation, no other consideration need exist (sec. 8173, Rev. Codes 1921).

5. The guarantor's engagement is a collateral undertaking, [6] whereby he is bound independently of the person for whose benefit his promise was made (*Emerson-Brantingham Co.* v. *Raugstad,* 65 Mont. 297, 211 Pac. 305; *Butte Machinery Co.* v. *Carbonate Hill Mill. Co.,* 75 Mont. 167, 242 Pac. 956), and, on default of the principal, the guarantor is required

to pay such damages as may result therefrom (*Cole Mfg. Co.*
v. *Morton,* above).

6. Having responded in damages, a guarantor is entitled
to indemnity from the principal up to the amount which he
has been required to pay (*Savage* v. *Burns,* 3 Mont. 527), and
may at once maintain an action against the principal for
such amount, either upon an express or an implied contract
to reimburse him (28 C. J. 1937).

Lyon was therefore entitled to reimbursement up to the
amount of $3,300 paid by him on his contract of guaranty
to the Credit Corporation from Meyers, or from the bank,
if in fact the bank was his principal.

7. The directors and managing agent of the bank undoubt-
[7]   edly had authority to borrow money for the necessary
use of the bank and to pledge its assets for the repayment of
the money borrowed; that, doubtless, was what the directors
intended to do, and the method adopted was only resorted
to because the Agricultural Credit Corporation would not
loan money direct to the bank in its then condition.

8. These officers were agents or mandatories for the bank
in seeking to re-establish its sound condition (1 Michie on
Banks and Banking, 271); they were acting under the advice
of the Credit Corporation in a matter on which the officers
of that institution must have been fully advised, and, if the
directors mistook the law relative to the abstruse question as
to what would, and what would not, bind the bank under the
law merchant, that mistake must be considered excusable.   (1
Michie on Banks and Banking, 273.)

9. Such agents of the bank, acting within the scope of their
[8]   authority, are not individually liable upon the contracts
and obligations of the bank, where, from the manner in which
the instrument is executed, it is made to appear that it is
the obligation of the bank, and that the bank is the contract-
ing party; but it is otherwise where the instrument is executed
in the name of the officers and agents of the bank. "In
other words, if they wish to escape personal liability, they

must make it appear, either expressly or by necessary impli-
cation, that the obligation is that of the bank and not of them-
selves.'' (1 Michie on Banks and Banking, 347.)

Here, the managing agent, Meyers, did not attempt to
evade personal liability on his note, but he did so draft the
note, by incorporating therein reference to the loan and the
security given, as by necessary implication to show that it was
in fact the obligation of the bank for which he was acting
as agent, and that instrument carried the implied contract
to reimburse the guarantors thereon for the damage which
they might suffer by reason of default of the principal.

10. The performance of any agency is undertaken for the
benefit of the principal; to him belong all the profits and
advantages resulting from its execution, and it is eminently
just and proper that the principal should bear the natural
and legitimate burdens of the transaction, and that the
agent should not be called upon to suffer loss or injury for
acts done in the proper discharge of his duties. (1 Mechem
on Agency, 2d ed., sec. 1601.) Consequently, Meyers, who
acted for his bank in the transaction, should not be called
upon to reimburse the guarantors on his note given for the
benefit of the bank in securing a loan from which it received
the proceeds, but this burden should justly fall upon the bank.

11. Again, it must be remembered that this is an action in
[9] a court of equity, and that, at the time he consented to
become a guarantor, Lyon was also an agent of the bank
seeking to relieve it from its distress, and agreed to pledge
his individual credit at the instigation of, and for the benefit
of, his principal; to hold that, because the lender refused to
accept the signature of the bank, and required the signature
of another agent of the bank in its stead, Lyon, as an indi-
vidual, has no recourse against the bank for injury which he
has suffered, ''would be unconscionable, and is therefore im-
possible in a court of equity.'' (*Ainsworth* v. *Kruger, ante,*
p. 468, 260 Pac. 1055.) He stands in the same position

as does a director who becomes an individual guarantor of the bank's paper or a surety on a bank's bond for the protection of deposits. He was entitled to reimbursement from the bank, and, failing this, is entitled to have his claim approved as a general creditor of the bank. The trial court properly held that the claim should be allowed.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.