FIRST STATE BANK OF BRILLION, Appellant, vs. BOETCHER
and others, imp., Respondents.

*September 16—October 7, 1913.*

*Guaranty: Construed to be prospective: Renewal notes.*

1. Guaranties will be construed to be prospective rather than retro-
spective unless it clearly appears that they were intended to
cover past transactions.

2. An instrument reciting that it was given in consideration of the
"making advances or giving credit," guaranteeing payment of
"all moneys that shall at any time be due" from C. B. or B. &
Co. "on any balance of his or their account or indebted-
ness . . . *incurred with reference to this agreement,*" and pro-
viding that "this guaranty shall be a continuing guaranty and
apply to future advances," did not cover indebtedness exist-
ing at the time the instrument was executed nor notes there-
after given merely in renewal of those evidencing such in-
debtedness.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action was brought to recover balances due on three
several promissory notes executed by Charles Boetcher and
Louise Boetcher. The makers of the notes were made parties
defendant, as were *Fred Boetcher, O. E. Werner,* and
*R. G. Werner,* against whom liability was claimed as guaran-
tors. The action was tried by the court and judgment was
entered against the defendants Charles and Louise Boetcher
for the amount found due on the notes. As to the other de-
fendants judgment was entered dismissing the complaint
with costs. The plaintiff appeals from this portion of the
judgment. The guaranty involved reads as follows:

"In consideration of your making advances or giving credit
to Charles Boetcher individually or to himself and Louise
Boetcher, copartners under the firm name and style of
Boetcher & Co., doing business at the village of Brillion,
Calumet county, Wisconsin, we, the undersigned, hereby

guarantee the payment to you, *The First State Bank of Brillion* (a banking corporation organized and existing under and by virtue of the laws of the state of Wisconsin, doing business at the village of Brillion, Calumet county, Wisconsin), of all moneys that shall at any time be due from the said Chas. Boetcher, individually or from the said Boetcher & Co., or his or their representatives on any balance of his or their account or indebtedness to you, incurred with reference to this agreement not exceeding the sum of five thousand dollars.    This guaranty shall be a continuing guaranty and apply to future advances and when balances are at any time fully paid it shall apply to other future advances to the extent aforesaid.    You may give time to the said Charles Boetcher or to the said Boetcher & Company, renew his or their notes, compromise with him or them or with any persons liable secondarily in consequence of his or their indebtedness to you without impairing or affecting this guaranty.    You may take other securities as collateral and for any excess over said limit, may satisfy such excess out of the same, it being understood that as to any collaterals you may hold at the time I make a payment in full, my right of subrogation may attach when you decline to make further advances.    This guaranty, however, to end and determine upon my decease on your being notified thereof.    Any settlements, accounts stated or agreed balances made in good faith between you and the said Charles Boetcher or said Boetcher & Company, shall be binding and conclusive upon me.    Liabilities hereby incurred by me to be due and payable within thirty days after notice requiring such payment has been delivered to me or sent by mail by you to me or my personal representatives."

The court found on sufficient evidence that at the time this guaranty was executed Charles and Louise Boetcher were indebted to the plaintiff in the sum of about $6,000, which indebtedness was evidenced by notes then outstanding; that no additional loans were made to said parties after the guaranty was given; that the indebtedness existing at the time the guaranty was given had been reduced to about $1,500; that the notes outstanding which evidenced this indebtedness of $1,500, while given after the guaranty was signed, were

in fact renewals of notes outstanding on the date the guaranty was executed; that one of the principal debtors induced the alleged guarantors to execute the instrument of guaranty, and after he secured the execution of the instrument delivered the same to the bank; that no notice was given to the guarantors that the bank accepted them as such or relied on the guaranty until about April 30, 1910, at which time all the notes in suit were outstanding.

For the appellant there was a brief by *F. M. Wilcox* and *Nash & Nash,* and oral argument by *A. L. Nash.*

For the respondents there was a brief by *Hougen & Brady,* and oral argument by *A. L. Hougen.*

BARNES, J. The trial court held that the document in question was not a contract of guaranty, but simply an offer which would not become a binding contract until it was accepted by the bank and notice of such acceptance given to the guarantors. This conclusion was reached on the authority of *Miami Co. Nat. Bank v. Goldberg,* 133 Wis. 175, 113 N. W. 391, and *A. B. Kuhlman Co. v. Cave,* 135 Wis. 279, 115 N. W. 793, and decisions cited in those cases. It might be further said that it was at least assumed in *Sentinel Co. v. Smith,* 143 Wis. 377, 127 N. W. 943, that the law was correctly stated in the two prior decisions.

The trial judge further held that the alleged guaranty did not cover indebtedness existing at the time the paper was signed. As we think the court was correct in reaching this conclusion, and inasmuch as it disposes of the case, it is unnecessary to pass upon the other ground of nonliability which was found to exist.

The instrument recites that it is given in consideration of the "making advances or giving credit" and guarantees the payment of "all moneys that shall at any time be due from Charles Boetcher individually or from said Boetcher & Company . . . on any balance of his or their account . . . *in-*

*curred with reference tō this agreement."* It then proceeds that "this guaranty shall be a continuing guaranty *and apply. to future advances."*

It is clear that indebtedness due or to become due from Charles and Louise Boetcher to the bank when the guaranty was given was not incurred with reference to the guaranty. It is just as clear that the guaranty only covered indebtedness incurred in reference thereto. The renewal of notes which evidenced indebtedness existing at the time the guaranty was signed did not create any new indebtedness. Neither did it give any new or additional credit. Such action simply extended the time of payment of the old obligations. *Deseret Nat. Bank v. Burton,* 17 Utah, 43, 53 Pac. 215; *Drake v. Sherman,* 179 Ill. 362, 53 N. E. 628; *Whitehead v. American L. & B. Co.* 70 N. J. Eq. 581, 62 Atl. 554. Guaranties will be construed to be prospective rather than retrospective, unless it clearly appears that the parties intended that they should cover past transactions. 1 Brandt, Suretyship & G. (3d ed.) § 108; *Nat. Bank v. Rockefeller,* 174 Fed. 22; *People v. Lee,* 104 N. Y. 441, 10 N. E. 884; *Pritchett v. Wilson,* 39 Pa. St. 421. The court, having found on sufficient evidence that the notes sued upon evidenced indebtedness existing at the time the alleged guaranty was given, was right in holding that the guarantors were not liable on their undertaking even though it was in full force and effect.

It is argued that the guarantor *Fred Boetcher* acknowledged his liability on the guaranty and agreed to pay before suit was commenced and that recovery should be had against him in any event on his new promise. There was no consideration to support the promise, if one was made, and we do not think the evidence shows that a promise was in fact made.

*By the Court.*—Judgment affirmed.