EMERSON–BRANTINGHAM IMPLEMENT CO., Appellant, v. RAUGSTAD, Respondent.

(No. 4,948.)

(Submitted November 27, 1922.   Decided December 11, 1922.)

[211 Pac. 305.]

*Sales—Payment—Contracts of Guaranty—Not Retroactive in Operation—Promissory Notes—Renewal—Effect.*

Contracts—Guaranty—Surety—Distinction.
1. A contract of guaranty is distinguishable from one of surety, in that the former is an independent contract whereby the promisor is bound independently of the person for whose benefit it is made, while the latter is a contract whereby the promisor is bound jointly with the principal on the same contract.

Same—Province of Courts to Interpret, not to Make New Contracts.
2. It is the province of courts to interpret contracts which are open to interpretation, not to make new ones for the parties, or to alter or amend those which they themselves have made.

Same—Guaranty—Not Retroactive in Operation.
3. A contract (of guaranty) cannot be construed to have a retroactive operation, and such an effect will not be given it unless it is so provided by express words or by necessary implication it clearly appears to have been the intention of the 'parties to embrace past transactions.

Same—Promissory Notes—Renewal—Effect.
4. The renewal of a note evidencing an indebtedness does not create a new indebtedness, but simply amounts to an extension of the time of payment of the old obligation.

Sales—Guaranty of Payment for Goods—Held not to Relate to Past Transactions.
5. *Held*, that a letter of credit (treated as a contract of guaranty) providing that "in consideration of your extending credit for goods which you may at any time supply to T., I hereby guarantee the payment of such sums of money not exceeding $1,000 as are now or at any time hereafter may be due you from him for goods supplied," *etc.*, had no reference to past indebtedness but related only to obligations incurred in connection with goods for which an order was then placed and for such as might be thereafter supplied.

*Appeal from District Court, Fergus County; Roy E. Ayres, Judge.*

Action by the Emerson-Brantingham Implement Company against J. K. Raugstad. From a judgment for defendant, plaintiff appeals. Affirmed.

[65 Mont. 297.]

*Messrs. McKenzie & McKenzie,* for Appellant, submitted an original and a supplemental brief; *Mr. John McKenzie* argued the cause orally.

By signing the instrument in question respondent induced appellant to ship the machinery, and now, to relieve him from the terms thereof, would be a violation of the plain terms of said instrument and a fraud on appellant. "It is not competent for parties to such an undertaking to allege that they were ignorant of the existence of a debt expressly provided for." (*People* v. *Lee,* 104 N. Y. 441, 10 N. E. 887.) We submit that under the circumstances, appellant owed respondent no duty to disclose the indebtedness to him. Having guaranteed the payment of said past indebtedness without inquiring even as to the amount thereof, he cannot now complain because appellant's agents did not volunteer the information.

The case of *Palatine Ins. Co.* v. *Crittenden,* 18 Mont. 413, 45 Pac. 555, is one where defendant Crittenden gave plaintiff a bond with defendants Bartlett and Chauvin as sureties, conditioned that the principal would account and pay over to plaintiff all moneys of the company he might from time to time receive. Crittenden thereafter received money for plaintiff, but failed to pay the same to plaintiff, whereupon the action was brought by plaintiff to recover the money from Crittenden and sureties. Bartlett answered alleging that when he signed said bond defendant Crittenden, as a member of the firm of Crittenden & Tucker, was indebted to plaintiff in the sum of over $500 and that when he signed said bond he was not notified of said fact. The court held that there was no obligation resting on plaintiff to notify said surety of said indebtedness when no inquiry was made by said surety.

*Mr. Merle C. Groene,* for Respondent, submitted a brief and argued the cause orally.

Guaranties will be construed to be prospective rather than retrospective, unless it clearly appears that the parties in-

tended that they should cover past transactions. (Brandt on Suretyship and Guaranty, p. 108; *National Bank* v. *Rocke-feller,* 174 Fed. 22, 98 C. C. A. 8; *People* v. *Lee,* 104 N. Y. 441, 10 N. E. 884; *Pritchett* v. *Wilson,* 39 Pa. 421.) A guaranty ordinarily refers to future debts, and will be so construed in the absence of a clear intention to include accrued debts. (*Manhattan Rolling Mills* v. *Dellon,* 113 N. Y. Supp. 571.) The case of *First State Bank of Brillon* v. *Boether,* 154 Wis. 444, 143 N. W. 172, is in point.

Of course, it is recognized that the general rule of law is that there is no duty on the obligee to inform the surety about everything, but in this case, where the appellant solicited the respondent to sign the letter of credit and told him how he could protect himself, the duty rested upon the appellant to disclose the fact of the past indebtedness. (*American Nat. Bank* v. *Donnellan,* 170 Cal. 9, Ann. Cas. 1917C, 744, 148 Pac. 188; *Jungk* v. *Holbrook,* 15 Utah, 198, 62 Am. St. Rep. 921, 49 Pac. 305.) "A guaranty may relate to past debts as well as future advances, but it will not cover debts of which the guarantor is ignorant at the time of entering into the guaranty." (20 Cyc. 1438; *Drake* v. *Sherman,* 179 Ill. 362, 53 N. E. 628.)

MR. JUSTICE GALEN delivered the opinion of the court.

In this case it appears that one A. E. Trapp was engaged in selling farm implements at Grass Range, on the twelfth day of July, 1916, and for a long time prior thereto. The defendant, Raugstad, on the date mentioned, and for a couple of months prior thereto, had been in the employ of Mr. Trapp, selling farm machinery. Trapp had attempted to place an order with the plaintiff for a carload of farming machinery, and thereupon E. E. Aney and Mr. Bartlett, representatives and agents of the plaintiff, visited Mr. Trapp at Grass Range respecting such order. They then advised Trapp that the carload of machinery ordered by him would not be shipped unless he furnished security for the payment thereof. There-

upon Aney and Bartlett interviewed the defendant respecting the matter, and solicited him to execute a letter of credit, before the car of machinery would be shipped. They stated to the defendant that there was no chance of his losing, as he was working for Trapp, and could see that the money and notes received on sale of the machinery were applied in payment of the indebtedness thereon. The price of the entire car of machinery was about $2,500, and the defendant knew the machinery could be sold, because of orders already received. Nothing was said concerning any existing or past indebtedness of Trapp to the plaintiff. Thereupon the defendant executed and delivered the following guaranty agreement, to wit:

"Letter of Credit.

"To Emerson-Brantingham Implement Company (Incorporated), Rockford, Illinois:

"For value received, and in consideration of your extending credit for any goods which you may at any time supply to A. E. Trapp, of Grass Range, Mont., I hereby guarantee the payment of such sums of money, not exceeding $1,000.00, as are now or. at any time hereinafter may be owing to you from him for goods so supplied and for which amount this shall be a continuing guaranty. This guaranty may be revoked only by notice in writing signed by me and received by you at Rockford, Illinois, and then only as to indebtedness incurred after the receipt of such notice. The taking of notes or security, the renewal thereof or the extension of time shall not affect my liability and I waive notice of demand and nonpayment and notice of acceptance of this instrument.

"Dated July 12, 1916.

"J. K. RAUGSTAD. [Seal.]

"P. O., Grass Range, Mont.

"Witnessed by: E. E. ANEY."

The machinery was shipped as ordered, and was delivered at Grass Range two or three weeks later, the freight paid by Trapp, and the machinery moved into his place of business. Two plows were sold from this shipment, aggregating $150, which amount was accounted for and. turned over to the plain-

tiff. Within about a week. after the delivery of such carload of machinery, Ancy and Bartlett again visited Grass Range, and as plaintiff's agents, removed it, together with other implements from Trapp's warehouse, and made delivery of the same to the Grass Range Mercantile Company, all without notice to either Trapp or the defendant, and against the will and without the consent of either.

At the time of the execution and delivery of the letter of credit by the defendant, July 12, 1916, Trapp was indebted to the plaintiff on past transactions. On November 4, 1916, the defendant wrote a letter to the plaintiff, wherein the defendant disclaimed any liability on account of the letter of credit, and requested its return for the reason advanced that by taking the carload of machinery from Trapp as plaintiff did, the obligation became canceled. To which letter the defendant received a reply as follows:

"Emerson-Brantingham Implement Co.,

"Minneapolis, Minn., Nov. 9, 1916.

"Sub: A. E. Trapp, Grass Range, Mont.

"Mr. J. K. Raugstad, Grass Range, Mont.

"Dear Sir: Replying to yours of the 4th inst., beg to advise that we took the goods away from Mr. A. E. Trapp because he was not in position to pay us for goods that he had sold. So far as the goods are concerned, they were transferred to the Grass Range Mercantile Co.

"We are not going to ask you to pay for any of them. We gave Mr. Trapp direct credit for the full amount that he was charged for those goods, but it may be possible that we will have to ask you to make up a deficiency later on, but we hope not.

"We have some collateral and Mr. Trapp has given us a mortgage on crop for 1917, and has also given us a real estate mortgage for the balance due us.

"It is noticed that in your letter you speak of having guaranteed a certain carload. Now your guaranty does not mention any particular carload. It simply guarantees the payment of such sums of money not exceeding $1,000 that was

due at that time or at any time hereafter. You evidently did not get a copy of the letter of credit, and for that reason we are inclosing a copy herewith. The settlement sent in by our Mr. Aney has not yet been extended on our books, and so we are not in position to tell you exactly how much Mr. Trapp still owes us. If you would like us to give you that information a little later on, we can do so.''

This action was instituted September 24, 1919, and is predicated upon the indebtedness due plaintiff from Trapp, represented by two promissory notes, less payments made thereon, and the defendant's alleged liability to pay to the extent of $1,000, as guarantor, in consequence of the execution of the letter of credit. The first of these promissory notes is dated July 3, 1915, due and payable January 1, 1916, for $495, and was given to plaintiff in settlement of the balance due on the purchase of a tractor; and the second is for the sum of $1,088.60, dated November 4, 1916, payable November 1, 1917, given to the plaintiff by Trapp in renewal of other notes theretofore and prior to the date of the signing of the letter of credit, executed in purchase of farm machinery. The notes are interest bearing at the rate of eight per cent per annum until maturity, and thereafter at ten per cent. After deducting payments made on both these notes, the plaintiff alleges a total balance, due from Trapp at the time of filing the complaint, of $1,070.84, and asks judgment against the defendant, Raugstad, for the sum of $1,000.

Upon issue joined, the cause was tried to the court without a jury, and thereafter findings of fact and conclusions of law were made and filed in favor of the defendant, upon which judgment was regularly made and entered that the plaintiff take nothing, and that the defendant recover his costs from the plaintiff. The appeal is from the judgment.

Although many alleged errors are assigned, there is in our opinion but one question involved determinative of the case, *viz.:* Is the defendant liable upon his contract of guaranty for indebtedness incurred by Trapp to the plaintiff on prior transactions?

Whether termed "a letter of credit" or "a contract of guaranty" it amounts simply to a contract of guaranty. A [1] contract of guaranty is distinguishable from one of surety, in that the former is an independent contract, whereby the promisor is bound independently of the persons for whose benefit it is made, while the latter is a contract whereby the promisor is bound jointly with the principal on the same contract. (*Cole Mfg. Co.* v. *Morton,* 24 Mont. 58, 60 Pac. 587; see, also, *Square Butte State Bank* v. *Ballard,* 64 Mont. 554, 210 Pac. 889.)

"The distinction between the contract of guaranty and the contract of suretyship is not always clear. Especially is this true where the guaranty is absolute, as distinguished from a conditional guaranty. * * * In case of suretyship there is but one contract binding the surety and the promisor, but in the case of a guaranty there are two contracts, one binding the principal debtor and one binding the guarantor. A creditor may bring an action jointly against a surety and the debtor; but he cannot join both the guarantor and the debtor in one suit. The agreement of the surety is that he will do the thing which the principal has undertaken; the agreement of the guarantor is that the principal will do what he is bound to perform." (12 R. C. L., sec. 6, p. 1057; see, also, 28 C. J. 890; Stearns on Suretyship, 2d ed., sec. 6.)

"In ascertaining the meaning of the language of a contract of guaranty the same rules of construction control as apply in the case of other contracts. In accordance with such rules the important question is, if possible, to determine and give effect to the intention of the parties as ascertained by a fair and reasonable interpretation of the terms used and the language employed in the contract of guaranty as read, when necessary, in the light of the attendant circumstances and the purposes for which the guaranty was made." (28 C. J. 930, 931.)

It is the province of the court to interpret contracts which are open to interpretation, not to make new ones for the

[2-5]   parties, or to alter or amend those which they them-
selves have made. (*Frank* v. *Butte & Boulder* etc. *Co.*, 48
Mont. 83, 135 Pac. 904; *State Bank of Darby* v. *Pew*, 59
Mont. 144, 195 Pac. 852.)

"The language of a contract is to govern its interpretation,
if the language is clear and explicit, and does not involve an
absurdity.". (Sec. 7529, Rev. Codes 1921.)

"When a contract is reduced to writing, the intention of
the parties is to be ascertained from the writing alone, if
possible." (*Id.* 7530.)

"The whole of a contract is to be taken together   *   *   *
to give effect to every part, if reasonably practicable, each
clause helping   *   *   *   the other." (*Id.* 7532.)

"A contract may be explained by reference to the cir-
cumstances under which it was made and the matter to which
it relates." (*Id.* 7538.)

"However broad may be the terms of a contract, it ex-
tends only to those things concerning which it appears   *   *   *
the parties intended to contract." (*Id.* 7539.)

Applying these rules of construction to the guaranty con-
tract made the basis of this action, it is clear that the defend-
ant cannot be held thereon for a pre-existing indebtedness of
Trapp. Undoubtedly, the general rule is that a contract
cannot be construed to have a retroactive operation, and that
such an effect will not be given to it, unless it is so provided
in express words, or by necessary implication it clearly ap-
pears to have been the intention of the parties to embrace
past transactions. (Brandt on Suretyship and Guaranty, sec.
108; *National Bank* v. *Rockefeller*, 174 Fed. 22, 98 C. C. A.
8; *People* v. *Lee*, 104 N. Y. 441, 10 N. E. 884; *Pritchett* v.
*Wilson*, 39 Pa. 421; *First State Bank* v. *Boetcher*, 154 Wis.
444, 143 N. W. 172.) The renewal of the note which evi-
denced an indebtedness at the time the guaranty was exe-
cuted did not create a new indebtedness. Neither did it
give any new or additional credit. It amounted simply to
an extension of the time of payment of the old obligation.

There is nothing in the instrument executed by defendant susceptible of being so construed as to hold the defendant liable for the then existing debts of Trapp. Defendant's obligation to plaintiff seems perfectly clear, *viz.: "In consideration of your extending credit* for any goods *which you may at any time supply* to A. E. Trapp, I hereby *guarantee the payment of such sums of money not exceeding* $1,000 *as are now or at any time hereafter may be due you from him for goods so supplied,"* etc.

The language employed could have no reference to past indebtedness, for nothing is stated with respect thereto. It clearly related to the obligation incurred *in praesenti* in connection with the carload of machinery for which an order was then placed with and accepted by the plaintiff, and such as should accrue thereafter for goods supplied Trapp on credit. Clearly it relates only to the immediate present, and the future, not to the past. To hold the defendant responsible thereon for pre-existing obligations of Trapp to plaintiff is not in any manner justified.

In 1 Brandt on Suretyship and Guaranty, third edition, section 139, the author cites a quite similar case to the one before us (*Glyn* v. *Hertel*, 8 Taunt. 208) as follows: "A guaranty provided that the guarantor would be answerable to the plaintiff to the extent of 5,000 pounds for the use of the house of S. & Co. When the guaranty was given S. & Co. were indebted to the plaintiffs, for which the plaintiffs held their notes and bills. Upon receiving the guaranty, the plaintiffs canceled the notes and delivered up the bills to S. & Co., and S. & Co. thereupon delivered the bills and a new note to the plaintiffs, but no money passed. *Held,* the guaranty only contemplated future loans to S. & Co., and the transaction did not amount to a loan which would charge the guarantor."

The court having found, based on sufficient evidence, that the notes of Trapp described in the complaint, evidenced an indebtedness existing at the time the letter of credit was exe-

cuted, clearly was correct in absolving the defendant of any liability on his undertaking.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY and FARR and HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of MR. CHIEF JUSTICE CALLAWAY, disqualified, concur.