ASSOCIATES FINANCIAL SERVICES COMPANY, INC., Respondent, v. EISENBERG, Appellant.

*No. 104. Argued March 30, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 272.)

For the appellant there were briefs and oral argument by *Donald S. Eisenberg* of Madison, in pro per.

For the respondent there was a brief by *Grutzner & Jaeckle* of Beloit, and oral argument by *Edward E. Grutzner*.

HALLOWS, C. J.   The facts are not in dispute. On May 27, 1965, Northern loaned DEC $56,605.20. The loan was secured by a chattel mortgage on two used airplanes owned by DEC and by personal guaranty of its president Robert P. Fleming and his wife Barbara L. Fleming. Eisenberg was a director of DEC at the time but was not a party to this transaction. On the following August 10th a second loan was made by Northern to DEC in the sum of $50,000 which was secured by a chattel mortgage

on fixtures and equipment of DEC and by a pledge and a mortgage of real estate by P & C Inc., a corporation owned by Eisenberg. The loan was further secured by the promises of Fleming and his wife and Donald S. Eisenberg in their capacity as sureties. Contemporaneously with this loan, Mr. Eisenberg executed a written guaranty which provides in relevant part as follows:

"I, Donald S. Eisenberg, the undersigned, a director of DEC-Aviation Corporation, do hereby request Northern Illinois Corporation of DeKalb, Illinois to grant and give from time to time financial accommodations and credit to DEC-Aviation Corporation and in consideration of such financial accommodations and credit extended, receipt of which is hereby acknowledged, I hereby individually guarantee the payment of any and all obligations of DEC-Aviation Corporation, which may be contracted with or owing to Northern Illinois Corporation of DeKalb, Illinois, to the extent of fifty thousand and no/100 dollars, plus interest and costs of collection. I further guarantee the prompt and faithful performance and discharge by DEC-Aviation Corporation of any and all of its obligations under any notes as present or future agreements of DEC-Aviation Corporation with Northern Illinois Corporation."

This guaranty is the basis of the present action. The third loan was made February 28, 1966, in the sum of $13,652.16 and was secured by a chattel mortgage on an airplane. Subsequently DEC found itself in financial difficulties and unable to make payments on the three loans. It made an assignment of its assets for the benefit of creditors and the assets were sold to Mr. Eisenberg for sufficient funds to pay the second loan, which was then paid in full to Northern.

Eisenberg contends his written guaranty covers only the second loan with which it was executed and in which it is listed as security. Since this loan was paid in full he maintains he is not responsible for the balances due on other loans.

It is normally true that a guaranty and loan documents executed at the same time between the same contracting parties in the course of a transaction should be construed together. *Seaman v. McNamara* (1923), 180 Wis. 609, 193 N. W. 377; *Milwaukee Acceptance Corp. v. Kuper* (1969), 42 Wis. 2d 515, 517, 167 N. W. 2d 256. This does not mean, however, that the scope of the guaranty must be limited to the amount of the loan. Whether a guaranty is restricted to a contemporaneous loan depends upon its language in the light of the circumstances. While it is true Eisenberg's guaranty is expressly limited to $50,000, the exact amount of the contemporaneous loan, other language in the guaranty makes it clear that future loans were contemplated. We agree with the trial court that to limit the guaranty to the contemporaneous loan would make it superfluous because Eisenberg was primarily liable on that loan as surety.

Some courts have relieved an uninformed guarantor of his promise on equitable grounds when a lending agency has made unreasonable demands for such security. *See Indianapolis Morris Plan Corp. v. Sparks* (1961), 132 Ind. App. 145, 172 N. E. 2d 899. But, that is not the fact here. This case involves sizable commercial loans between a lending agency and a corporation and the guarantor is an attorney and a director of the corporation. He is not an innocent victim to be protected by the equity power of the courts.

Eisenberg argues he was a gratuitous surety and as such is entitled to favorable treatment. We have held a surety contract when ambiguous should be construed in favor of the surety unless the surety executes the contract for a premium or other consideration. *Estate of Oeflein* (1932), 209 Wis. 386, 395, 245 N. W. 109; Restatement, *Security* (1941 ed.), pp. 233, 234, sec. 82, Comment. Eisenberg is not in the guaranty business, has received no premium and, so far as the record shows, re-

ceived no "other consideration" within the meaning of this rule. While the distinction between a guaranty and a surety is clouded by the language in the *Estate* of *Bitker* (1947), 251 Wis. 538, 20 N. W. 2d 449, and its reliance on *Mitchell Street State Bank v. Froedtert* (1919), 169 Wis. 120, 170 N. W. 822, the distinction should be made clear that a guarantor is secondarily liable on the obligation while a surety is primarily liable. 38 Am. Jur. 2d, *Guaranty,* p. 997, sec. 2; 38 C. J. S., *Guaranty,* p. 1130, sec. 2. Any blurring of these two concepts in *Bitker* is to be disregarded. However, in the process of interpreting the scope of the promises in such documents, the distinction between a guarantor and a surety is immaterial. Both a contract of surety and a contract of guaranty are security devices and when ambiguous the same principle of construction should apply. While the cases are not unanimous, we think when the contract is ambiguous the doubt should be in favor of the gratuitous surety and the uncompensated guarantor.

We consider Eisenberg's guaranty to be ambiguous and to require construction. We disagree with the trial court that the guaranty covered the first loan as well as the second and the third. The language of the guaranty requests Northern "to grant and give from time to time financial accommodations and credit to DEC." This is language of the future. The guaranty then states that in consideration of "such financial accommodations and credit extended . . . [Eisenberg] guarantee . . ." This consideration contemplates the future by the use of the term "such financial accommodations and credit," which refers back to the request.

The document then guarantees "the payment of any and all obligations of DEC-Aviation Corporation, which may be contracted with or owing to Northern." We read this language as contemplating only the future because of the verbs "may be contracted with or owing to." While

it is possible to extract from this sentence that Eisenberg guaranteed "the payment of any . . . obligations . . . owing to Northern," we do not think it is a reasonable construction under the circumstances. The next sentence of the guaranty guarantees the faithful performance and discharge by DEC of any and all its obligations under any notes as present or future agreements of DEC with Northern. Under this language, "present or future agreements" could include the contemporaneous loan of August 10th, but we cannot read this language as including a prior or past agreement in existence at the time the guaranty was executed. A future contract is one to be made in the future and the word "present" used in a parallel context means a contract made in the present, or presently, not a contract made in the past but whose obligations presently exist. This sentence only enlarges the scope of the guaranty in the previous sentence from payment to the faithful performance and discharge of other obligations contained in the notes. A guaranty is to be construed to be prospective rather than retrospective unless it clearly appears that the parties intended it should cover past transactions. *First State Bank v. Boetcher* (1913), 154 Wis. 444, 447, 143 N. W. 172.

We conclude the guaranty includes the third loan, the second loan, but not the first loan.

*By the Court.*—Judgment reversed, with direction to enter judgment for the proper amount on the third note of February 28, 1966, including interest and costs; on this appeal no costs are allowed to either party.

WILKIE, J., took no part.