VANDERVEST and wife, Plaintiffs and Respondents, v. KAUFFMAN PIZZA, INC., and others, Defendants: POWERS and others, Defendants and Appellants.

*No. 296. Argued June 5, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 428.)

232

234

"...

242

For the appellants there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* attorneys, and *Richard C. Ninneman* and *James W. Mohr, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Ninneman* and *Mr. Mohr.*

For the respondents there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm, S. C.,* attorneys, and *John C. Whitney* of counsel, all of Green Bay, and oral argument by *John C. Whitney.*

BEILFUSS, J.   The principal contention of the defendants-appellants-guarantors is that they were gratuitous guarantors or uncompensated sureties,[7] and as such they were entirely relieved of their obligation because of material change in the terms of the guaranty made without their consent.   The rule is that a gratuitous surety or uncompensated guarantor is discharged of his obligation if there is a material change in the contract or obligation.[8]   It is further true that if the contract of the gratuitous surety is ambiguous it must be liberally construed in favor of the gratuitous surety.[9]

The plaintiffs-respondents-lessors answer this contention by claiming the guarantors were not uncompensated sureties; that the changes were not material; that Kauffman was in fact the agent of the guarantors and that the plaintiffs-lessors are not asking for any damage or guaranty based upon a change of contract, but only asking for performance of the guaranty as set forth originally in the lease.

A resolution of the dispute between the parties rests, in part, upon equitable consideration.   We will discuss the issues generally rather than specifically.

The appellants take exception to the trial court's findings that Kauffman was the agent of the guarantors and

---

[7] There is a distinction between a guarantor and a surety in that a surety is primarily liable and a guarantor secondarily liable. *Associates Financial Services v. Eisenberg* (1971), 51 Wis. 2d 85, 90, 186 N. W. 2d 272, but that distinction is not argued or at issue here.

[8] *Sage v. Strong* (1876), 40 Wis. 575; *Nichols v. Palmer* (1880), 48 Wis. 110, 4 N. W. 137.

[9] *Associates Financial Services v. Eisenberg, supra.*

that he had apparent authority to bind them and that they were not "gratuitous guarantors." They correctly argue that apparent agency and authority cannot rest solely upon the statements made to third parties by the agent but are dependent upon the principal's manifestation of consent.[10] It is generally held there must be three elements to establish apparent agency: (1) Acts by the agent or principal justifying belief in the agency; (2) knowledge thereof of the party sought to be held; and (3) reliance thereon consistent with ordinary care and prudence.[11]

We believe the finding that Kauffman was the agent of the guarantors is not against the great weight and clear preponderance of the evidence.

The appellants were the sole stockholders and directors of Kauffman Pizza, Inc.[12] At the time of the original negotiations the corporation was not in existence. Vandervest testified (the testimony was objected to) that he was representing three doctors. This testimony was received not to prove the fact stated but to show the subjective state of mind of Vandervest at the time of the negotiations and eventual contract. The franchise to operate a Shakey Pizza Parlor was owned by one of the doctors and not by Kauffman Pizza, Inc., or Kauffman; the building has to be and was built to conform to the franchise requirements. Vandervest would not enter into or sign a contract to construct the building until he was furnished with a financial statement of the three doctors. Nor would he sign the lease before the doctors signed it as guarantors. Pursuant to these demands, Kauffman did furnish Vandervest with the doc-

[10] *Hansche v. A. J. Conroy, Inc.* (1936), 222 Wis. 553, 269 N. W. 309.

[11] *Domasek v. Kluck* (1902), 113 Wis. 336, 339, 89 N. W. 139; *also see: Ivers & Pond Piano Co. v. Peckham* (1966), 29 Wis. 2d 364, 139 N. W. 2d 57.

[12] Appellants' reply brief, pages 2 and 3.

tors' financial statements and they did sign the guaranty agreement before Vandervest signed the lease. The doctors, through Kauffman, did invite Vandervest to Wichita to discuss the acquisition of land and construction of additional pizza parlors. They also discussed with him, in a limited and general way, how the Green Bay operation was going and the competency of a prospective manager. Inferentially they knew of the rental demanded by and collected by the bank in the amount of $1,348.50. A reasonable inference from the evidence is that Kauffman was replaced as manager and discharged as an employee solely by the doctors as directors. One of the doctors, personally, took over the active management of the pizza parlor and signed the rental checks. And, finally, the discussion to quit the business and abandon the premises was made by the doctors and their attorney.

We believe this evidence is sufficient to establish that the acts and representations of Kauffman were either directed or known and ratified by the defendants-appellants. This, coupled with their own manifestations and participation, justified Vandervest in reasonably believing and relying upon Kauffman's apparent authority as their agent.

We conclude, as did the trial court, that the defendants-appellants were more than mere uncompensated guarantors. There was good and sufficient consideration for their agreement to guarantee the rental payments—without it the building would not have been built and the lease would not have been entered into. Because of this consideration flowing to them they cannot claim the benefit of a rule that allows a gratuitous surety or uncompensated guarantor to escape his original liability by a change in terms of the principal's obligation.

The trial court further concluded that the doctors were in fact the corporation and that the corporate veil should be pierced so as to deny them limited liability. We agree

with this conclusion. Without repeating the evidentiary facts set forth above, it can be said that the entire pizza parlor venture in Green Bay was solely the personal enterprise of the defendants-appellants. They owned all of the stock, they were the directors, and they had control of the management and operation of the business. They had personally guaranteed the performance of the lease. To allow them to escape liability under these facts would work a fraud upon Vandervest. Equity should step in and pierce the corporate veil, if necessary, to hold the guarantors-stockholders-directors personally liable upon their written promise.[13]

There is no attempt in this action to impose liability upon the defendants beyond the amounts calculated under the terms of the original written guaranty. We need not, therefore, discuss any increased liability because of the increase of the payments from $1,300 to $1,348.50 per month.

The interlocutory judgment entered by the trial court should be affirmed.

*By the Court.*—Judgment affirmed.

[13] *R. B. General Trucking v. Auto Parts & Service* (1958), 3 Wis. 2d 91, 99, 87 N. W. 2d 863; *Marlin Electric Co. v. Industrial Comm.* (1967), 33 Wis. 2d 651, 148 N. W. 2d 74; *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.* (1965), 27 Wis. 2d 112, 121, 122, 133 N. W. 2d 737.