Michael S. AMATO and Amico International, Inc., an Illinois Corporation, Plaintiffs,

v.

CREATIVE CONFECTIONS CON-CEPTS, INC., a Wisconsin Corporation n/k/a Creative Connections Concepts, LLC, a Wisconsin Corporation, Creative Confections Concepts, LLC, a Wisconsin Corporation, and Steven Nicolet, Defendants.

No. 99–C–0576.

United States District Court, E.D. Wisconsin.

May 16, 2000.

John Malevitis, Chicago, IL, for plaintiff.

Terence J. Moran, Chicago, IL, Stephen Kravit, for defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Michael S. Amato alleges that defendant Steven Nicolet personally guaranteed an agreement by Creative, the corporate defendant, to purchase plaintiff's Creative stock and, when Creative defaulted, refused to honor the guaranty. Amato, an Illinois citizen, filed this case in the Northern District of Illinois but venue was transferred to this district. Nicolet is a Wisconsin citizen, and the court has diversity jurisdiction. Nicolet now moves for summary judgment.[1]

### I. FACTUAL BACKGROUND

Plaintiff and defendant both owned stock in Creative. They reached an agreement that defendant and other Creative shareholders, Ray Kiely and Thomas Ryan, as well as the company itself, would purchase plaintiff's Creative stock. Plaintiff, defendant, Kiely, Ryan and Creative's counsel, David Roettgers, scheduled a meeting for July 29, 1994, at Creative's Milwaukee office to execute the agreement ("Agreement"). The Agreement provided that plaintiff would sell his 377 shares for

---

1. Amato controlled plaintiff Amico International, Inc., and Nicolet was President of Creative which went bankrupt. This motion involves only the claim of Amato against Nicolet.

$330,000, with the following division of shares and purchase prices: Creative, 251.337 shares for $220,000; Nicolet, 43.650 shares for $38,209; Kiely, 63.225 shares for $55,345; and Ryan, 18.788 shares for $16,446. Under the Agreement Kiely, Ryan and Nicolet would pay for their shares immediately and Creative would pay in twenty-four monthly installments. The Agreement includes a merger clause stating that "[t]his Agreement represents the entire agreement of the parties with respect to the matters described herein." (Am.Compl.Ex. A ¶ 5(d).)

On July 29, before the others arrived, plaintiff asked defendant to sign a guaranty ("Guaranty") that plaintiff's lawyer had drafted. The Guaranty required that defendant pay Creative's debt to plaintiff if Creative defaulted. When plaintiff asked defendant to sign the Guaranty defendant expressed resistance, but plaintiff told him that he needed the Guaranty to go through with the deal. At this point Kiely, Ryan and Roettgers' arrived, whereupon all parties executed Agreement. According to plaintiff, after the others left he presented the Guaranty to defendant who signed it, saying "[i]f it's really important to you, yes, if I go broke, I go broke." (Pl.'s Dep. 29–30, 34.) The Guaranty recites that it is "for good and valuable consideration, and to induce Seller to sell his shares of stock in corporation." (Aff. of C. Claiborne Greene Ex. 4.) Defendant denies signing the Guaranty. (Def.'s Dep. at 37.) Additional facts regarding discussions between plaintiff and defendant are set forth later in this decision.

Plaintiff does not have the original or a copy of the signature page of the Guaranty. He states that he gave the signed Guaranty to a secretary at Creative to be copied along with the other documents and that the signature page was not included with the copies he received back from Creative.

Between August 31, 1994 and October 20, 1995, Creative made installment payments to Amato totaling $119,800. (Nico-

let Dep. at 46.) Creative then defaulted leaving a balance of $100,200 which plaintiff now seeks from defendant.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there is a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.* Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, courts should act with caution. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party has the initial burden of demonstrating that he is entitled to judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. 2548. Neither party may rest on mere allegations or denials in the pleadings, or upon conclusory statements in affidavits. *See Anderson,* 477 U.S. at 248, 106 S.Ct.

2505; *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989). Both parties must produce documentary evidence to support their contentions. *See Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir.1990).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is not required to draw "every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

### III. DISCUSSION

Defendant argues that the Guaranty is unenforceable because of the absence of consideration.[2] The parties agree that the issue is governed by Wisconsin law.

### A. Law of Consideration

▮ A guaranty is a contract and, like other contracts, is generally unenforceable unless supported by consideration. *In re Estate of Menzner v. Marathon County Bank*, 189 Wis. 340, 341, 207 N.W. 703 (1926). Although there is little agreement about just what consideration is, *see United States v. Meadors*, 753 F.2d 590, 595 (7th Cir.1985), an exchange of promises amounting to a bargain will generally constitute consideration. *Ferraro v. Koelsch*, 124 Wis.2d 154, 368 N.W.2d 666 (1985). The consideration for a promise to act as a guarantor may be the agreement by the promisee to enter into the underlying contract or it may be a separate promise. *Meadors*, 753 F.2d at 597; *see also Restatement of Suretyship* § 9(2)(a) (secondary obligation does not fail for lack of consideration if underlying obligation and the later creation of the secondary obli-

gation was part of the exchange for which the obligee bargained). However, new consideration is required for a guaranty of an existing indebtedness. *See Menzner*, 189 Wis. at 341, 207 N.W. 703. This stems from the basic contract principle that "a promise to do something which the promisor is already legally obligated to do does not constitute consideration." *Holcomb v. United States*, 622 F.2d 937, 941 (7th Cir. 1980). But where a guaranty includes a recitation of consideration—as the present Guaranty does—the recitation creates a presumption that consideration exists. *Estate of Mingesz v. Kieffer*, 70 Wis.2d 734, 740, 235 N.W.2d 296 (1975).

### B. Forbearance as Consideration

▮ Plaintiff argues that when Creative defaulted he did not accelerate the debt or file a lawsuit and that such forbearance constitutes consideration for the Guaranty. However, forbearance from enforcing a legal right is not consideration for a guaranty unless the guaranty is given in return for a promise to forbear. *See* 38 Am.Jur.2d *Guaranty* § 44 (1999); *Perry v. Riske*, 2 Wis.2d 377, 383–84, 86 N.W.2d 429 (1957). "Mere forbearance or omission on the part of the creditor to exercise his legal right without any agreement to that effect is not sufficient, because he may at any moment, and at his own pleasure, proceed. There must be promise for promise." *Cowles Publishing Co. v. McMann*, 25 Wash.2d 736, 172 P.2d 235 (1946) (citing 1 Brandt *Suretyship and Guaranty* § 25 at 68). In the present case plaintiff did not forbear until after the Guaranty was allegedly executed and did not promise to forbear in return for the Guaranty. Thus, plaintiff's forbearance was not consideration for the Guaranty.

### C. Contemporaneous Execution as Consideration

▮ Plaintiff argues that because the Agreement and Guaranty were execut-

---

**2.** Defendant also denies signing the Guaranty, but for summary judgment purposes I must assume that he did.

ed contemporaneously, the Guaranty is supported by the same consideration as the Agreement, i.e., plaintiff's sale of his Creative stock. It is generally true that where guaranty and loan documents are executed at the same time between the same parties they are construed together and may be supported by the same consideration. *Associates Fin. Servs. Co. v. Eisenberg,* 51 Wis.2d 85, 89, 186 N.W.2d 272 (1971). Here, however, plaintiff asserts that the defendant executed the Guaranty a few minutes after the signing of the Agreement and after all the signators except plaintiff and defendant had left. Moreover, even if two documents are executed simultaneously, it does not necessarily follow that both are supported by the same or any consideration. *See Meadors,* 753 F.2d at 597–98. Further, defendant is not precluded from raising the defense of lack of consideration. *Id.* The critical question is not so much when the documents were signed but whether there was a bargain between plaintiff and defendant and, if so, what was the nature of the bargain.

### D. Could There Have Been a Bargain?

█ Defendant argues that plaintiff asked him to sign the Guaranty, but that he refused whereupon plaintiff signed the Agreement anyway. Thus, defendant asserts, the Guaranty was unsupported by consideration because, when defendant signed it, plaintiff was already bound by the Agreement. Therefore, defendant contends, the Guaranty was gratuitous hence unenforceable.

The record, however, is more ambiguous than defendant suggests with respect to what, if any, understanding plaintiff and defendant reached regarding the Guaranty. Plaintiff testified that when he asked defendant to sign the Guaranty: "At first, he said, you know, this and that and the other thing, and I said I'm not going to—I can't make this deal unless I have some protection. The corporation can go down tomorrow." (Pl.'s Dep. at 29.) In response to further questioning on the point plaintiff testified:

A. What I said, First he—he felt, you know, he couldn't do it and then I told him, well I—I have to have it.

Q. And then what did he say?

A. Well, that's when the other people came in and they signed the papers, and then I presented it to Steve again after they had left.

Q. And then what discussion did you have?

A. He said, "If it's really that important to you, you, yes if I go broke, I go broke," and he signed it.

*Id.* at 34.

In addition, plaintiff testified about conversations with defendant prior to July 29, 1994, and both plaintiff and defendant testified about their own personal relationship. Plaintiff was asked if he had earlier conversations with defendant about a personal guaranty, and he responded that defendant:

always used to say that verbally, that, I don't know, I'd never have to worry, he would make sure it was always good. That's all we ever talked about that way from day to day, yeah, but nothing specifically put into my words.... We always talked about it, not so much as a signing, as man-to-man personal guaranty.

(*Id.* at 31–32.) Plaintiff further testified that "Steve was signing to protect me, to get my money from my stock, from CCC." (*Id.* at 24.)

Defendant corroborated the close and apparently protective relationship that he had with plaintiff:

Q. At any time do you recall assuring Mike Amato that you would personally guarantee the money that was owed him?

A. No, but you have to understand. Mike and I were like brothers, so there's something you don't have to

say to each other except when a brother sues another brother.

Q. Well, what does that mean? I mean are you saying—

A. I don't know.

Q. You don't—you don't have to—he didn't have to say anything to you, or you didn't have to say anything to him—

A. I have no idea.

Q.—and you knew you were going to pay him?

A. I have no idea.

(Def.'s Dep. at 85.)

Thus, neither plaintiff nor defendant testified that defendant unequivocally refused plaintiff's request to sign the Guaranty. Rather, the testimony is that defendant initially expressed reluctance. In addition to not rejecting plaintiff's request, defendant also permitted plaintiff to proceed with the sale of his stock. The testimony also makes clear that defendant's non-refusal and his willingness to go ahead with the sale took place in the context of a close personal and protective relationship with plaintiff where, according to defendant, there were things that "you don't have to say to each other." (Def.'s Dep. at 85.) When considering how to assess defendant's response to plaintiff's request this context is relevant.

Construing the evidence in the light most favorable to plaintiff, a reasonable jury could find that defendant acquiesced in plaintiff's request that he agree to the Guaranty. Viewed in this light, defendant's signing of the Guaranty was not a gratuitous act but evidence of his prior acquiescence. The recitation of consideration in the Guaranty is also a factor in plaintiff's favor.

A reasonable jury could also find that the Guaranty was not supported by consideration. The presence of the merger clause in the Agreement is a factor in defendant's favor. However, the question on summary judgment is not which party has the stronger case but whether a reasonable jury could find for the non-moving party. For the reasons stated, a reasonable jury could so find. Thus, defendant's motion must be denied.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **DENIED.**